FILED
United States Court of Appeals
Tenth Circuit

August 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHARON E. HILL,

> Plaintiff–Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

> Defendant–Appellee.

No. 07-4226
(D.C. No. 1:07-CV-0004-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

Sharon E. Hill appeals from an order of the district court affirming the

Commissioner's decision denying her application for Social Security disability

benefits. Ms. Hill filed for these benefits on January 22, 2004. She alleged

disability based on arthritis, edema, high blood pressure, depression, sinus and

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

migraine headaches, and chronic pain. The agency denied her applications initially and on reconsideration.

On June 13, 2006, Ms. Hill received a de novo hearing before an administrative law judge (ALJ). Prior to testimony at the hearing by Ms. Hill and a vocational expert (VE), her attorney amended her alleged disability onset date to February 28, 2002. Ms. Hill's insured status expired June 30, 2002. Therefore, the relevant time period for determining her disability status is from February 28, 2002, the date she claimed she became unable to work, through June 30, 2002, her date last insured (DLI). *See Adams v. Chater*, 93 F.3d 712, 714 (10th Cir. 1996).

In his decision after the hearing, the ALJ determined that Ms. Hill had two severe impairments: lumbar spondylosis and hypertension. He rejected her claim that her other alleged impairments were "severe" within the meaning of the regulations. *See* 20 C.F.R. § 404.1520(c). In particular, he discounted her claim that her arthritis was a severe impairment prior to the expiration of her insured status on June 30, 2002.

The ALJ then found that Ms. Hill retained the residual functional capacity (RFC) to perform the full range of light work with no mental, postural, manipulative, visual, communicative, or environmental restrictions. He determined that with this RFC she could return to her past relevant work as a production assembler. Thus, she was not disabled within the meaning of the

Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. The ALJ decided this case at step four of the analysis; thus the burden was on Ms. Hill to establish her disability.

On appeal, Ms. Hill contends that the ALJ erred: (1) by failing to find that her rheumatoid arthritis was a severe impairment; (2) in evaluating the effect of her arthritis on her RFC; (3) by failing to call a medical expert to testify concerning her disability onset date; (4) in evaluating her credibility; and (5) in determining that she could do her past relevant work. Because she has not shown that the ALJ's factual findings lack substantial evidence or that he did not apply the correct legal standards, we affirm.

### 1. Arthritis as a Severe Impairment

At step two of his analysis, the ALJ found that Ms. Hill had only two severe impairments at the time of her DLI: lumbar spondylosis and hypertension. He specifically rejected her claim that her arthritis was "severe":

> [T]he undersigned finds that the claimant's rheumatoid arthritis was not a medically determinable impairment during the relevant time period. For instance her rheumatoid factor was negative 6 weeks after the claimant's DLI in August of 2003 [sic]. . . . Although later findings revealed an increase in arthritic pain of various joints with some joint swelling and a positive rheumatoid factor in July of 2004, this all occurred after the claimant's onset date and after her insured status.

Aplt. App. at 19-20.

A determination that an impairment is "severe" at step two requires only a *de minimus* showing. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). The evidence prior to expiration of claimant's insured status showed that she was prescribed Relafen, Aplt. App. at 191, which is a non-steroidal anti-inflammatory medication used for treatment of arthritis. *See* Physician's Desk Reference 1617-18 (57th ed. 2003). She reported to her doctor on March 21, 2002, that she had exercised regularly until her arthritis prevented her from doing so. Aplt. App. at 241. On June 3, 2002, she had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. *Id.* at 356. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. *Id.*

Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.

This error does not require reversal, however. Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). But this does not mean that the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe." *See* S.S.R. 96-8P, 1996 WL 374184, at *5. We turn next to whether he correctly performed that portion of his analysis.

## 2. Effect of Arthritis on Ms. Hill's RFC

Ms. Hill asserts that in assessing the effect of her arthritis on her ability to work, "[t]he ALJ did not even consider whether [she] had functional limitations from [arthritis]." Aplt. Br. at 25. But this is incorrect. Notwithstanding his earlier finding at step two, as part of his RFC assessment, the ALJ stated:

> Regarding her rheumatoid arthritis, the joints most affected by this are her hands, shoulders and knees. As a result, she is always dropping objects. The undersigned observed the claimant's hands,

> noting no swelling, redness or joint deformity. The claimant
> explained that her prescribed medications helped with that. [She
> testified that back] at the time of her alleged onset, she had difficulty
> writing and could only write 1/4 of a page. She could not hold her
> shoulders up for very long and had trouble lifting objects as she did
> not have the strength in her arms and shoulders.

Aplt. App. at 20.

He further noted that in February 2002, before expiration of her insured status, Ms. Hill "was having some problems with arthritis and was complaining of feeling run down. However, the claimant did note that Relafen was working in reducing her symptoms." *Id.* at 21. "A physical examination revealed some mild osteoarthritic changes of the distal and proximal interphalangeal joints. . . . Laboratory testing suggested that this was not a progressive systemic process." *Id.* The ALJ stated that Dr. Booth examined her in June 2002 but "did not think she had an inflammatory polyarthritis at this time." *Id.* He noted the later diagnoses of arthritis that were made *after* her insured status had expired.

The ALJ also stated that "[t]he medical evidence of record near in time to her date last insured simply does not reflect the severity of the complaints alleged by the claimant in her testimony." *Id.* at 23-24. He noted that although claimant testified at the hearing to "problems with writing, lifting, grasping, pushing and pulling due to loss of strength and pain, problems of this nature were not reflected until after the claimant's DLI when she had observable joint inflammation and a later positive rheumatoid factor." *Id.* at 24. Thus, the ALJ both considered

claimant's arthritis as part of his evaluation of her RFC, and made specific findings concerning his conclusions that it would not affect her ability to work prior to her last insured date. Considering all the evidence, the ALJ's conclusion that Ms. Hill could perform light work as of her DLI is supported by substantial evidence. The ALJ reached a permissible conclusion that the problems in her fingers and knees had not reached the point that they would prevent her from working as a production assembler at the time she was last insured.

Ms. Hill further argues that the ALJ failed to support his conclusions concerning her RFC by affirmatively linking those conclusions to the evidence. The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In addition to the evidence considered by the ALJ, the claimant presented a letter to the Appeals Council from Dr. Booth dated August 9, 2006. In the letter, Dr. Booth stated that when he saw the claimant four years before, on June 3, 2002, he concluded that she had osteoarthritis in her knees and a probable meniscal injury. He also felt at that time that she had some sort of inflammatory arthritis involving the knuckles of her hands, the knuckles of her feet, and "some of her ankles," Aplt. App. at 14, and osteoarthritic changes in her back. While he

-7-

did not remember the examination, he stated that his records would indicate that the arthritis was "a significantly painful condition that would certainly have had more than a minimal effect on her ability to work." *Id.* He further stated that while he was not familiar with the details of Ms. Hill's work assembling and repairing blinds, "I would suspect that the involvement, especially of her hands and of her feet and knees if she were required to stand, would have significantly been impaired." *Id.*

The Appeals Council considered this new letter and made it part of the record but stated that it did not provide a basis for changing the ALJ's decision. *Id.* at 3, 6. We must therefore consider the entire record, including Dr. Booth's letter, in conducting our substantial evidence review. *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006). Having done so, we agree with the Appeals Council that Dr. Booth's letter does not fatally undercut the ALJ's finding that Ms. Hill's problems with arthritis would not have prevented her from performing light work. Dr. Booth provides only the most general details concerning the degree of impairment posed by Ms. Hill's retrospectively-diagnosed arthritis. His opinion adds very little to the conclusions and descriptions already contained in his treatment notes, which were before the ALJ. The letter provides no details in terms of specific limitations, such as the number of hours claimant could stand each day or how much work she could do with her hands. This evidence was insufficient to overcome the ALJ's conclusions

regarding the non-severity of her arthritis as revealed by the medical records on which Dr. Booth relied.

### 3. Onset Date

Claimant argues that the ALJ should have called a medical expert to determine the onset date of her disability. Onset date is "the first day an individual is disabled as defined in the [Social Security] Act and the regulations." S.S.R. 83-20, 1983 WL 31249, at *1. Expert testimony is helpful where the ALJ has determined that the claimant eventually became disabled but there is some ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's insured status. *See Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006). Here, the ALJ never made a finding that Ms. Hill eventually became disabled, and she fails to show from the evidence that there was an ambiguous "onset date" which required clarification.

### 4. Credibility Determination

The ALJ found Ms. Hill's testimony only partially credible. She raises a number of challenges to this determination of her credibility. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). But "[i]t is well-established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (quotation omitted).

Ms. Hill first complains that the ALJ stated she did not have problems with fatigue. The ALJ noted that "[p]roblems of fatigue and passing out were not reported in the findings." Aplt. App. at 23. She contends this is incorrect because Dr. Booth noted that she had been "quite fatigued and ha[d] poor sleep patterns," *id.* at 288, and a physician's assistant noted in February 2002 that she reported that she was feeling "tired and run down," *id.* at 191. Ms. Hill testified that in addition to fatigue, her blood pressure caused her to pass out, but she points to no medical evidence to support this contention. These limited references to fatigue in the medical record do not require reversal of the ALJ's decision on credibility.

Ms. Hill argues that the ALJ ignored her problems with standing in connection with his evaluation of her credibility and her RFC. At step four, it was her burden to establish her disability. *Andrade*, 985 F.2d at 1051. Although there is evidence before the expiration of her DLI that she had arthritic knees, there was no evidence that she could not stand and/or walk with this condition, particularly since her anti-inflammatory medication appeared to provide significant relief from her arthritic symptoms, *id.* at 354, and her doctor actually encouraged her to do more walking to control her weight. *Id.* at 288.

-10-

Ms. Hill also contends that the ALJ improperly required corroboration for her pain rather than a loose nexus to a pain-producing impairment. We do not read his decision this way. The ALJ stated "[w]hen dealing with an old date last insured, the undersigned must rely on a review of the contemporaneous medical records to corroborate the claimant's testimony." *Id.* at 23. Taken in context, the ALJ's statement did not impose a requirement of corroboration but rather acknowledged that the loose nexus should be established using contemporaneous medical records. In sum, Ms. Hill has failed to show that the ALJ's credibility finding is unsupported by substantial evidence.

### 5. ALJ's Finding Regarding Past Relevant Work

The ALJ found that Ms. Hill could return to her past relevant work as a production assembler. The VE testified that this job is identified in the Dictionary of Occupational Titles (DOT) as being performed generally at the "light" level, but that based on Ms. Hill's testimony, she performed it at a "medium" level of exertion, and two days per week at the "heavy" level. *Id.* at 399. The fact that Ms. Hill performed the job at an exertional level greater than that at which it is generally performed, *see id.* at 400, does not mean that she could not return to the job. The pertinent Social Security Ruling explains that

> a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform:
>
> 1. The actual functional demands and job duties of a particular past relevant job; *or*

-11-

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

S.S.R. 82-61, 1982 WL 31387, at *2. Therefore, if Ms. Hill could perform the job as it is generally performed throughout the national economy, even though she could not perform her prior job, she is not disabled under the cited Social Security Ruling.

The ALJ found that Ms. Hill could in fact do the production assembler job as it is generally performed at the light level. She contests this finding, contending that her previous job was not as a production assembler at all, but was some other occupation. She cites her hearing testimony that in addition to assembling Levelor blinds, she had to check the blinds for defective slats and repair any problems with the blinds that she assembled. She contends that this takes her job out of the DOT definition of production assembler.

Ms. Hill's argument is undermined by the fact that she does not identify another occupational listing that she contends would be closer to the job she previously performed. Thus, she presents nothing to undermine the VE's expert testimony, which took her testimony into account, that her previous work falls into the DOT listing of production assembler.

Finally, Ms. Hill argues that under *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), the ALJ was required to make a specific correlation between the physical and mental demands of her past relevant work and determine whether she

-12-

has the abilities the job demands despite her limitations.  As the Commissioner points out, however, *see* Aplee. Br. at 35, this issue was not raised in the district court and has therefore been waived.  *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge