FILED
United States Court of Appeals
Tenth Circuit

December 23, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DEBRA ANN LUTTRELL,

   Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

   Defendant-Appellee.

No. 10-5161
(D.C. No. 4:08-CV-00357-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit
Judges.

---

   Debra Ann Luttrell ("Claimant") appeals from an order of the district court,

issued by the magistrate judge on consent of the parties under 28 U.S.C. § 636(c),

affirming the Commissioner's decision to deny social security disability and

supplemental security income benefits.  This court independently reviews the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Commissioner's decision to determine whether it is free of legal error and supported by substantial evidence, though our review is limited to those issues properly preserved in the district court and adequately presented on appeal. *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g),[1] we affirm.

**Commissioner's Decision**

The Administrative Law Judge (ALJ) denied benefits at the last step of the five-step process for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing five-step process). At step one, the ALJ noted Claimant had not engaged in substantial gainful activity since March 17, 2005, the alleged disability onset date. Aplt. App. Vol. 2 at 16. At step two, the

---

[1]     Upon opening this case, the clerk noted that the notice of appeal, filed on Monday, November 29, 2010, appeared to be three days late and asked the parties to address our jurisdiction. Submitting a copy of a general order issued by the chief judge of the Northern District of Oklahoma officially closing the district court on Friday, November 26, 2010, Claimant argued her appeal was timely under Fed. R. App. P. 26(a). We agree. While the chief judge cannot declare legal holidays, *see Hart v. Sheahan*, 396 F.3d 887, 890 (7th Cir. 2005); *see also* Fed. R. App. P. 26(a)(6)(B) (noting federal holidays include "any day declared a holiday by the President or Congress"), a closure order entered by the chief judge does render the district court clerk's office "inaccessible" for filing within the meaning of Rule 26(a)(3)(A), which extends the filing period "to the first accessible [business] day." *See, e.g.*, *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 747 (9th Cir. 2001) (holding official closure of district court clerk's office "was sufficient to make it 'inaccessible' [under] Rule 26"); *Latham v. Dominick's Finer Foods*, 149 F.3d 673, 674 (7th Cir. 1998) (holding "that Rule 6(a) (and its counterpart appellate . . . Rule 26) should be read to exclude any day on which the district court is . . . officially closed"), *abrogated in part on other grounds by Hart*, 396 F.3d at 890-91.

ALJ found Claimant "has the following severe impairments: back problems, depression, anxiety, legs and arms go numb, ear infection, headaches, bruised ribs, and stomach problems." *Id.* At step three, the ALJ determined that these impairments do not meet or equal any of the per se disabling impairments listed in 20 C.F. R. Part 404, Subpart P., Appendix 1. *Id.* at 17. At step four, the ALJ found Claimant has the residual functional capacity (RFC) for only a limited range of sedentary work, precluding her return to past relevant work. *Id.* at 19, 22. Specifically, the ALJ found she can perform work limited to

> lifting 20 pounds, standing and walking 2 hours out of an 8 hour day at 1 hour intervals, sitting 6 hours out an 8 hour day at 1 hour intervals, limited crawl and operate foot controls, occasional bend, stoop, crouch, kneel, squat, push pull, and reach overhead. The claimant should avoid rough uneven surfaces, unprotected heights, fast and dangerous machinery, and cold. The claimant is further limited to a low noise environment and should avoid telephone work. There is also a slight limitation in the ability to finger feel and grip and should have easy access to restrooms. Further, the work must be kept simple, repetitive, and routine; and include a slight limitation on contact with public, coworkers, and supervisors.

*Id.* at 19-20. Finally, the ALJ concluded at step five that Claimant is not disabled because, "[c]onsidering [her] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [she] can perform"–i.e., the jobs of clerical mailer and ticket counter clerk identified by the vocational expert (VE) who testified at the hearing. *Id.* at 23-24. The Appeals Council denied review of the ALJ's decision, making it the Commissioner's final decision for purposes of judicial review. *Krauser*, 638 F.3d at 1327.

-3-

**Challenges to Commissioner's Decision**

Claimant challenges the Commissioner's decision on the grounds that the ALJ did not perform (1) a proper determination at step five; (2) a proper analysis of the medical source opinions; and (3) a proper credibility determination. Aplt. Opening Br. at ii. Claimant's briefing is not as simple or clear-cut as this list of issues might suggest, however, as she raises a number of subsidiary points of error under these broad headings and there is also some overlap among the points raised. We address all of her arguments that merit discussion below, though not necessarily in their precise order of presentation in her briefs.

**A. ALJ's Determination at Step Five**

Claimant's primary objection to the ALJ's step-five determination appears to be with the ALJ's treatment of the findings of a psychological consultative examiner (CE), who conducted extensive testing and prepared a mental RFC assessment for Claimant after the hearing at the ALJ's direction. The CE found "Moderate Limitation" in six of twenty categories (Claimant had "No Significant Limitation" in the rest),[2] including "[t]he ability to interact appropriately with the

---

[2]     The available ratings were: "No limitation," meaning "No affect [sic] on ability to perform basic work functions"; "No significant limitation," meaning "Only minimal affect on ability to perform basic work functions"; "Moderate limitation," meaning "Affects but does not preclude ability to perform basic work functions"; "Marked limitation," meaning "Seriously affects ability to perform basic work functions"; and "Severe limitation," meaning "Extreme affect on ability to perform basic work functions." Aplt. App. Vol. 2 at 213.

general public," Aplt. App. Vol. 2 at 214, and "[t]he ability to set realistic goals or make plans independently of others," *id.* at 215. Claimant contends the ALJ ignored the latter two limitations–omitting them from the hypothetical to the VE on which the ALJ's finding of nondisability was based–despite generally adopting the CE's findings. This contention is simply not borne out by the record.

As the RFC recited earlier reflects, the ALJ found a limitation on contact with the public (and co-workers and supervisors) and, more importantly, specifically included that limitation in his hypothetical to the VE, *see id.* at 364. While initially referring to this limitation in general terms as "slight," the ALJ went on to describe its intended extent in detailed concrete terms that conveyed a much more substantial restriction, explaining that the

> limited contact with the public should be brief and cursory. It can be repetitive but it should be brief and cursory. Working in a fast food restaurant, it's brief, it's cursory, falls within what I consider the parameters of this description. A bank teller however may not fall into this restriction because it may be more complex than I'm anticipating. A shoe or dress salesman may not fall under this because it may be more prolonged than I anticipate. I do not see this restriction restricting working in an assembly line with co-workers[.]

*Id.* at 364-65. The ALJ also clarified that "working with the telephone should not be an [integral] part of her job. I don't see her being a receptionist." *Id.* at 364. So fleshed out, the restriction on public contact the ALJ conveyed to the VE is consistent in substance with a "moderate" limitation, as found by the CE, that

effects–though neither preclusively nor seriously–the ability to perform basic work functions involving contact with the public. *See supra* n. 2.

A similar point undercuts Claimant's objection regarding the limitation on planning and goal setting. Again, the ALJ did not parrot the term "moderate" in this connection, but fleshed out in concrete terms a restriction sufficient to capture such a limitation, telling the VE "to keep the wor[k] simple, repetitive and routine," *id.* at 364, and that "this person should not be an integral member of team that's going to participate in goal setting or process planning," *id.* at 365.

Claimant further objects that the ALJ's hypothetical limited her to occasionally reaching *overhead*, when the underlying finding by the CE regarding reaching–that she could reach "at least occasionally . . . perhaps frequently," *id.* at 220–did not indicate the direction of the restricted movement. But that was done by Claimant herself at the hearing. As the Commissioner points out, when the ALJ asked her whether she "ha[s] trouble reaching in any direction," Claimant only replied "Up." *Id.* at 346. Claimant's effort in her reply brief to disassociate herself from her own clarification of the matter is unpersuasive. She notes that reaching is defined in the Dictionary of Occupational Titles (DOT) as extending the hands and arms *in any direction*, Reply Br. at 5, but this just explains why the ALJ asked her to specify the direction(s) in which she has trouble reaching–if anything, lending more of a point to her restrictive answer. She also argues that her answer of "up" actually includes every direction, since the arms must be lifted

from one's side in order to reach in any direction.  *Id.*  This casuistic contention makes a mockery of the commonsense colloquy between the ALJ and Claimant at the hearing.  The ALJ simply and clearly asked Claimant to specify in which particular direction(s) she had trouble reaching.  She could have replied "all" or included some indication of "forward."  She did not.  Instead she identified a single (different) direction–and one that is not somehow inherently implausible standing alone.  We will not now question the ALJ's reliance on the plain meaning of that response on the basis of an after-the-fact attempt to, in effect, substitute a different response through strained interpretation.

Claimant also argues that the ALJ ignored the VE's response to an inquiry by counsel regarding Global Assessment of Functioning (GAF) scores she had been given during an initial intake assessment for depression at the Grand Lake Mental Health Center (GLMHC) in June 2006.  She had received a score of 41 for then-current functioning and 45 for "highest in the past year" (a period before she had even been seen at GLMHC or anywhere else for treatment of depression).[3] Aplt. App. Vol. 2 at 188.  The VE indicated that Claimant could not work if "that GAF was on a consistent basis . . . over a period of time."  Id. at 370.

---

[3]    The GAF is a subjective rating on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.  A score in the range of 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning."  *Id.* at 34.

The problem with this argument is that the ALJ was not required to adopt the GAF scores, which are clearly inconsistent with the more specific mental limitations the ALJ found on the basis of the CE report discussed earlier. The CE report was prepared by an "acceptable medical source" and hence qualifies as a medical opinion, while the GAF scores, assessed by a counselor, do not. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(d); *id.* §§ 416.913(a), 416.927(d). This alone is a ground for relying on the CE report. SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." (internal quotation marks omitted)). More importantly, the CE's detailed mental RFC, based on extensive cognitive and psychological testing conducted just two months before the ALJ's decision in January 2008, was simply more probative, temporally and substantively, of Claimant's condition than the GAF scores, assessed eighteen months earlier.[4] Indeed, progress notes from GLMHC itself showed Claimant was "doing well" on medication with "[n]o complaints of

---

[4]    This court has repeatedly noted (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)) that generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are "not essential to the RFC's accuracy." *See, e.g.*, *Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011); *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010).

depression" by November 2006. Aplt. App. Vol. 2 at 170. In short, while clearly aware of the GAF scores assessed in June 2006,[5] the ALJ properly chose to rely on the more detailed and temporally probative medical opinions related by the CE in October 2007 in determining Claimant's mental limitations.[6]

We recognize that the ALJ had a duty to consider the GAF scores even though they were not assigned by an acceptable medical source. SSR 06-03p, 2006 WL 2329939, at *5; *see, e.g.*, *Bowman v. Astrue*, 511 F.3d 1270, 1275-76 (10th Cir. 2008). But "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-03p, 2006 WL 2329939 at *6. As this court has made clear, the ALJ need not discuss every piece of evidence in the record; it is enough if the ALJ discusses the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Here, the GAF

[5] The ALJ referenced GLMHC records in his decision, Aplt. App. Vol. 2 at 18-19, and, of course, was present when counsel asked the VE about the GAF scores at the hearing. The ALJ also specifically affirmed he had considered opinion evidence in accordance with the requirements of SSR 06-03p. *Id.* at 20.

[6] Claimant suggests in passing, without any developed argument or citation to supporting authority, that even if the ALJ properly relied on the CE's findings to deny disability at the time of his decision, she "perhaps should have been considered for at least a closed period of disability" based on the GAF scores. Aplt. Opening Br. at 24. This suggestion does not qualify as adequate appellate argument and was not even mentioned below. As noted at the outset, we do not consider issues that have not been properly preserved in the district court and adequately presented on appeal. *See Krauser*, 638 F.3d at 1326.

scores were neither uncontroverted nor significantly probative, particularly given their remote timing and conflict with the CE's detailed medical findings, based on extensive objective testing performed shortly before the ALJ's decision. While it may have been preferable for the ALJ to have specifically recited why he chose to disregard the GAF scores, it is enough that "the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03p, 2006 WL 2329939, at *6. Here, while the specifics must be (and easily are) inferred, the general outline of the ALJ's reasoning is clear: aware of the GAF scores and the associated requirements of SSR 06-03p, *see supra* n.5, the ALJ chose to rely instead on the CE's contrary findings. We have no difficulty in affirming that decision.[7] *Cf. Bowman*, 511 F.3d at 1275-76 (holding question of compliance with SSR 06-03p a "close one" and including matter in remand where it was unclear whether opinion from non-acceptable medical source even conflicted with other medical opinion).

---

[7]     To anticipate an objection: we have not run afoul here of the general prohibition on post hoc rationales for agency decisionmaking. *See generally Krauser*, 638 F.3d at 1328-29. That is, we have not supplied a new rationale for the ALJ's determination of Claimant's mental limitations, but merely recognized that the ALJ's stated rationale, with its tacit but obvious rejection of the GAF scores in favor of the CE's contrary findings, is sufficient to comply with SSR 06-03p. This court does as much (and must do so) any time it affirms a disability decision challenged on the ground that the ALJ did not address a piece of evidence the claimant incorrectly insists was uncontroverted or significant enough to require explicit discussion.

Claimant's last step-five objection concerns the ALJ's analysis of opinions related by her (purported) treating physician. This matter is more appropriately addressed in the next section on the handling of medical source opinions.

**B. ALJ's Analysis of Medical Source Opinions**

Claimant's primary objection to the ALJ's analysis of the medical source opinions in the record concerns a report prepared by Dr. Richard Tidwell shortly before the hearing, which characterized Claimant's physical condition and associated pain in terms that the VE conceded would render her unable to work. *See* Aplt. App. Vol. 2 at 200-03, 373. Claimant contends the ALJ erred in failing to give the report controlling weight as the opinion of a treating physician under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), or to explain why, if it did not qualify as a treating opinion, it still did not outweigh the contrary findings set out in a CE report, prepared by Dr. E. Joseph Sutton II, that the ALJ relied on for the physical aspects of RFC.

Substantial evidence supports the ALJ's determination that Dr. Tidwell did not qualify as a treating physician when he prepared his report. "A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[.]" *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (quoting § 416.927(d)(2)(i)). "A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting

relationship, or merely because the claimant designates the physician as her treating source." *Id.* Thus, unless it is the only relevant medical opinion in the record, the opinion of a source "who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Id.*

Here, the record reflects that when Dr. Tidwell prepared his report on August 9, 2007, he had seen Claimant once, over a year earlier. *See* Aplt. App. Vol. 2 at 158-59. Claimant suggests Dr. Tidwell may have seen her the day he prepared his report, because she "thinks the handwriting on the treatment notes and the RFC report is the same." Aplt. Opening Br. at 24. This argument is disingenuous in more than one respect: Claimant studiously avoids actually affirming that she saw Dr. Tidwell that day, and a review of the cited progress notes reveals that *there are none* even potentially corresponding to Dr. Tidwell's report, i.e., notes for August 9, 2007, or any dates shortly before that.[8] *See* Aplt. App. Vol. 2 at 249. Finally, Claimant emphasizes that Dr. Tidwell saw her again, some five months later, *id.* at 247, but she cites no authority, nor are we aware of any, for the facially untenable notion that the report of a non-treating medical source can retroactively acquire the status of a treating opinion if a qualifying

---

[8] Claimant's argument seems to have shifted in her reply brief, where she appears to be suggesting that one of the progress notes from *November* 2007 may have been written by Dr. Tidwell. *See* Reply Br. at 10 (citing progress notes spanning Aplt. App. Vol. 2 at 246-47). That would in any event be irrelevant to the status of Dr. Tidwell's report from August 2007, for reasons discussed above.

relationship arises later. A treating source opinion is accorded special weight because *that opinion* is uniquely informed by an extant treating relationship; a later-arising relationship obviously has no value in that regard.

Of course, Dr. Tidwell's report was still entitled to consideration as a medical source opinion, and Claimant argues that the ALJ erred in affording it little weight relative to the opinion of Dr. Sutton. The ALJ explained his reasoning as follows:

> [G]reat weight is given to the consultative reports from October 2007 [the mental RFC report discussed earlier and Dr. Sutton's physical RFC report]. These doctors reviewed all the records within the file and personally tested and evaluated the claimant. Their reports were written immediately following their examinations. There is a [RFC] form competed by Richard Tidwell, M.D. on August 9, 2007 [who] . . . saw the claimant only once, in July 2006 . . . . Very little weight is given to this report due to the fact that it was completed over a year after this physician saw the patient and Dr. Tidwell is not a treating physician. There is a considerable amount of difference between this RFC and the ones from the consultative examinations and the State Agency. Based upon the substantial evidence to the contrary of Dr. Tidwell's opinion and the discrepancy in the claimant's testimony about her abilities and those assessed by Dr. Tidwell, little weight is given to his opinion.

*Id.* at 22. Claimant objects that the ALJ did not discuss the relevant factors for weighing medical opinions in §§ 404.1527(d), 416.927(d), but this passage clearly touches on several of them, including the treating/examining relationship, the nature and degree of support presented for the opinions, and the consistency of the opinions with the record as a whole. In sum, "[t]he ALJ provided good reasons in his decision for the weight he gave to the [medical] sources' opinions.

Nothing more was required in this case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted).

Claimant objects in passing to an observation made by Dr. Sutton regarding her heal and toe walking. The doctor observed she might have some problem with balance, *see* Aplt. App. Vol. 2 at 220, while Claimant now suggests what the doctor saw should have been attributed to muscle weakness, Aplt. Opening Br. at 25. It is not the province of the courts to second-guess the medical correctness of basic clinical observations. We have repeatedly stressed that an ALJ may not interpose his own judgment over a physician with respect to medical findings, *see, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996); *a fortiori*, we may not do so in the course of reviewing the ALJ's decision.

Finally, we note that Claimant directs some of her objections here toward a much earlier report submitted by an agency doctor who had only reviewed the (then-underdeveloped) record. We need not pause over these objections, as the ALJ did not adopt this reviewer's opinion that Claimant could perform medium work–an overly optimistic opinion appropriately deemed superseded by the far more pertinent and informed findings made two years later by the examining Dr. Sutton.

## C.  Credibility Determination

Claimant objects to the ALJ's conclusion that her subjective complaints were not fully credible insofar as they conflicted with the clinical findings in the CE reports the ALJ relied on for his RFC determination.  The ALJ noted several discrepancies in Claimant's statements and behavior, including her use/non-use of a cane, driving/not driving a car (and her stated reasons for not driving), and claiming to have had/claiming never to have had a mini-stroke.  *See* Aplt. App. Vol. 2 at 21-22.  Claimant offers explanations for these apparent inconsistencies and insists they need not reflect adversely on her credibility, but it is not for us to re-weigh or to interpose our own judgment of the evidence in this way.  *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992).

In addition, the ALJ noted that Claimant's daily activities were not indicative of someone experiencing the disabling pain she had alleged.  Aplt. App. Vol. 2 at 22.  Earlier in his decision, the ALJ noted that Claimant's daily activities reflected "only a mild restriction.  The claimant testified that she goes to the store, does dishes, dusts, and sweeps, makes her bed, cooks, and is able to week her flower bed albeit sitting down."  *Id.* at 18; *see also id.* at 349-50.  The ALJ also noted that testing and physical examinations had revealed "normal or only mild deficits."  *Id.* at 22.  While such diagnostic evidence is not alone sufficient to resolve a credibility question regarding the severity of symptoms, it

-15-

is part of the equation, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Of course the detailed CE opinions regarding functional impairments and symptoms resulting from her diagnosed conditions are relevant as well, *see id.* §§ 404.1529(c)(3), 416.929(c)(3), and these did not support Claimant's account of symptoms that would have precluded any sustained work on her part.  In sum, the ALJ did not rely on a boilerplate recitation of the relevant factors and a bald conclusion, but discussed a set of relevant reasons supporting his credibility assessment.  *See generally* Aplt. App. Vol. 2 at 20-22.  This assessment was legally and factually sufficient to satisfy the requirement that credibility findings "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted); *see, e.g.*, *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002).

The judgment of the district court is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Senior Circuit Judge

-16-