**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 21, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————

ROBERT CHRISMON, II,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,*

Defendant-Appellee.

No. 12-5184
(D.C. No. 4:11-CV-00325-FHM)
(N.D. Okla.)

———————————————

**ORDER AND JUDGMENT**

———————————————

Before **TYMKOVICH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

———————————————

Plaintiff Robert Chrismon, II, appeals from a district court order, issued by the

magistrate judge under 28 U.S.C. § 636(c), affirming the Commissioner's decision to

deny social security disability and supplemental security income benefits. We

---

* In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-
appellee in this action.

** After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

independently review the Commissioner's decision to determine whether it is free of legal error and supported by substantial evidence. *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). Although a number of objections advanced by Mr. Chrismon lack merit, we conclude this case must be remanded to the agency for reconsideration of a critical medical source opinion that was inadequately addressed and discounted on a basis not supported by the administrative record.

## I. AGENCY DECISION

The Administrative Law Judge (ALJ) denied benefits at the last step of the five-step sequence for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

At step one the ALJ confirmed that Mr. Chrismon has not engaged in substantial gainful activity since September 30, 2008, the alleged onset date.

At step two the ALJ found Mr. Chrismon "has the following severe impairments: Status post traumatic left C6-7 facet disruption with left C7 radiculopathy with sequelae including left C6-7 facetectomy, foraminotomy and C6-T1 posterior fusion and instrumentation; Depression and Schizoaffective Disorder; [and] Substance Abuse Disorder." App. Vol. 2 at 18.

At step three the ALJ held that Mr. Chrismon's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, App. 1.

At step four the ALJ determined that Mr. Chrismon has a residual functional capacity (RFC) for a limited range of light work, precluding a return to his past relevant work. Specifically, the ALJ found Mr. Chrismon's light RFC to be restricted by "further postural limitations in that [he] is unable to stoop due to status post fracture of [his] cervical spine with fixation and [he] can perform only simple and some complex tasks due to problems with his concentration." App. Vol. 2 at 20-21.

Finally, the ALJ concluded at step five that Mr. Chrismon is not disabled because, "[c]onsidering [his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform." The vocational expert (VE) who testified at the evidentiary hearing identified the jobs of motel housekeeper, electrical assembler, bench assembler, and optical assembler. *Id.* at 26-27.

The ALJ chose not to rely on a medical source opinion reflecting the severity of Mr. Chrismon's mental condition because it lacked supporting longitudinal records. On review before the Appeals Council, however, Mr. Chrismon supplemented the record by submitting treatment notes from the medical source. The Appeals Council accepted this new material but summarily concluded that it did not provide a basis for changing the ALJ's decision. It therefore denied review, making the ALJ's decision the final decision for purposes of judicial review. *See Wall*, 561 F.3d at 1051.

- 3 -

## II.  CHALLENGES TO AGENCY DECISION

Mr. Chrismon contends that the ALJ (1) erred in applying the listings at step three; (2) failed to propound a proper hypothetical to the VE; (3) incorrectly considered the medical source opinions; and (4) improperly performed the credibility determination.  Mr. Chrismon's briefing is not as clear as this list might suggest.  He interjects numerous objections, many only in passing, while discussing the designated issues.  We have considered all of the arguments material to our disposition, but we address here only those of sufficient substance and relevance to merit explicit discussion.

### A.  Challenge to Step-Three Determination

Mr. Chrismon contends the ALJ misapplied the definition of "repeated episodes of decompensation, each of extended duration" in 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00(C)(4),[1] and, as a consequence, erred in holding that he failed to satisfy the severity criteria in the listings for Schizophrenic Disorder, *id.* § 12.03, and Affective Disorder, *id.* § 12.04, both of which require such episodes. The magistrate judge summarily rejected Mr. Chrismon's objection regarding the definition in § 12.00(C)(4), because in his district court brief Mr. Chrismon referred only to that introductory regulation and "did not identify a specific listing [such as

---

[1] This regulation, introducing the mental-impairment listings that follow it, explains generally what episodes of decompensation are and clarifies that the "repeated" episodes "of extended duration" required in the subsequent listings "means three episodes within 1 year . . . each lasting for at least 2 weeks."

- 4 -

§ 12.03 or § 12.04] and discuss the evidence related to that listing." App. Vol. 1 at 45. Mr. Chrismon points out, however, that the ALJ had specifically discussed the listings in § 12.04, to which the definition in § 12.00(C)(4)—and hence his associated objection—clearly applies.[2] Nonetheless, his objection here fails for other reasons, so we need not enmesh ourselves in a debate over the magistrate judge's ruling.

There are two sets of potentially relevant severity criteria in the cited listings, commonly known as the "B criteria" in §§ 12.03(B) and 12.04(B) and the "C criteria" in §§ 12.03(C) and 12.04(C). The former require the specified mental impairment to result "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. §§ 12.03(B), 12.04(B). The ALJ found that *none* of these four B criteria were met. Thus, regardless of Mr. Chrismon's objection to the ALJ's assessment of episodes of decompensation for the fourth criterion (the only one he challenges), he still would not qualify for either listing under the B criteria.

Mr. Chrismon appears to recognize this problem and insists that, apart from the B criteria, a claimant also "meets or equals a listed impairment if he or she has

---

[2] The ALJ did not discuss § 12.03, but Mr. Chrismon contends the "diagnosis of schizophrenia would also qualify for *Listing* § 12.03," which contains the same severity criteria as § 12.04. Aplt. Opening Br. at 19. Adding the reference to § 12.03 does not bolster his position, which fails for the same reasons under both listings.

four episodes of decompensations and deteriorations resulting in a loss of adaptive functioning, documented by the need for a more structured psychological support system, three within a year or an average of once every four months, each lasting for two weeks.  20 CFR Pt. 404, Subpt. P, App. 1 § 12.00C4."  Reply Br. at 7-8; *see also* Aplt. Br. at 18.  But § 12.00(C)(4) does not mention this overarching four-episode rule, nor does any other regulation or listing.

Mr. Chrismon may have meant to refer to the alternative C criteria for the cited listings, which can be satisfied by repeated episodes of decompensation (again, three in a year, *see supra* n.1) without any of the additional functional restrictions required by the B criteria.  *See*  20 C.F.R. §§ 12.03(C)(1), 12.04(C)(1).  But an argument relying on the C criteria would run into the same general problem as the B criteria argument.  Repeated episodes of decompensation satisfy the C criteria only if *also* accompanied by a "[m]edically documented history of a chronic . . . disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  20 C.F.R. §§ 12.03(C), 12.04(C).

Mr. Chrismon has not even attempted to demonstrate that this qualification is met here, and it is not our role to shore up his argument for him, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *see also Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (noting the scope of our review in social

security cases is "limited to the issues the claimant properly preserves in the district court and adequately presents on appeal").[3]

## B. Challenge to VE Hypothetical

Mr. Chrismon objects that, in posing the dispositive hypothetical to the VE, the ALJ summarily referred to two medical-source reports containing physical and mental limitations rather than articulating the limitations himself.[4]  As the magistrate judge pointed out, however, Mr. Chrismon "did not identify any specific problems related to the ALJ's manner of presenting the hypothetical question."  App. Vol. 1 at 46.  We address five issues concerning the VE's testimony, one raised by the magistrate judge, and the others by Mr. Chrismon.

## 1. RFC conflict with a functional limitation

The magistrate judge independently identified one potential problem:  the ALJ's RFC determination conflicts with one of the functional limitations set out in the corresponding exhibit that was presented to the VE.  The exhibit indicates Mr. Chrismon could occasionally stoop, while the ALJ determined he was unable to

---

[3] The Commissioner further argues that the ALJ correctly found Mr. Chrismon had shown no more than two episodes of decompensation satisfying the 2-week durational requirement.  Given the dispositive threshold deficiencies in Mr. Chrismon's position noted above, we need not pursue the merits of this fact-intensive dispute.

[4] Mr. Chrismon complains that the ALJ's "hypothetical had no specific limitations for any of the physical demands of sitting, standing, walking, lifting, as required," Aplt. Opening Br. at 20, even though the referenced exhibit put all of these RFC components before the VE, *see* App. Vol. 3 at 316.

stoop at all.  But the magistrate judge deemed this inconsistency harmless because (per the authoritative Dictionary of Occupational Titles (DOT), 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1)) three of the four occupations the VE identified do not require stooping  and the 704,000 national and 48, 599 regional jobs they entail indisputably reflect work existing in the requisite "significant numbers" to satisfy the Commissioner's burden at step five, 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2).

Mr. Chrismon does not challenge this analysis on appeal, and we see no reason to question it sua sponte.  *See Berna*, 101 F.3d at 633-34 (refusing to review unchallenged rationale given by magistrate judge to affirm denial of benefits); *see also Garrett*, 425 F.3d at 840 (explaining that it is not this court's role to construct arguments for litigants).

2. **Alleged conflict between mental limitations reports**

Mr. Chrismon does argue that the ALJ's reliance on the particular report specifying mental limitations (Exhibit 10F) was improper because another report relating to mental limitations (Exhibit 9F) "contains moderate limitations in maintaining social functioning and moderate difficulties maintaining concentration, persistence, or pace" that were consequently "withheld from the VE by the ALJ." Aplt. Opening Br. at 22.  This argument ignores that the two reports (which were prepared the same day by the same doctor) serve distinct functions at different steps of the disability analysis, and the ALJ properly used Exhibit 10F at step five.

Exhibit 9F is a "Psychiatric Review Technique" (PRT) used to assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings). *See generally* 20 C.F.R. §§ 404.1520a, 416.920a. The PRT is structured specifically in terms of the B and C criteria of the listings for mental impairments. As relevant here, it uses only the four broad categories of limitation referenced in the B criteria: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and episodes of decompensation. App. Vol. 3 at 302.

In contrast, Exhibit 10F is a detailed "Mental Residual Functional Capacity Assessment" (MRFCA) of twenty specific mental functions. *Id.* at 306-07. The MRFCA breaks down the broad categories of the PRT into functional components for the finer vocational determinations required at steps four and five:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . and summarized on the [PRT].

Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184 at *4 (1996). Thus the PRT has single global ratings for social function and maintaining concentration, persistence, or pace, while the MFRCA breaks these categories down into five and eight distinct functions, respectively. *See* App. Vol. 3 at 306-07.

Against this backdrop, Mr. Chrismon's objection to the use of the MRFCA due to its "inconsistency" with the PRT is meritless. The PRT indicated "moderate" difficulties in social function and maintaining concentration, persistence, or pace, *id.* at 302, and the MRFCA fleshed out these global ratings by (1) noting a moderate limitation on "ability to interact with the general public," but identifying no significant limitation on four other social interaction abilities, and (2) noting a moderate limitation on "ability to carry out detailed instructions," but identifying no significant limitation on seven other measures of concentration and persistence, *id.* at 306-07. There is no inconsistency. The medical source who prepared both documents simply explained on the MRFCA the particularized underpinnings for the PRT's categorical ratings, and the ALJ properly used the former rather than the latter for the step-five determination.[5]

3. **Job determination without sufficient ALJ findings**

Mr. Chrismon objects that the determination whether there were jobs whose demands could be met despite his limitations was made "in the VE's head" without adequate ALJ findings, contrary to *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). We have repeatedly explained that proceeding in this way is a problem only at step four and is perfectly acceptable (and routinely done) at step five. *Krauser*,

---

[5] We have no occasion to consider the distinct issue whether PRT ratings must be incorporated in a VE hypothetical at step four or five when there is no associated MRFCA to detail the claimant's particularized mental limitations for that purpose. *Cf. Winschel v. Comm'r*, 631 F.3d 1176, 1180-81 (11th Cir. 2011).

638 F.3d at 1333 (quoting *Berna*, 101 F.3d at 633 (quoting *Winfrey*, 92 F.3d at 1025)).

4. **Conflict between exhibit and ALJ decision**

Mr. Chrismon objects that the ratings on Exhibit 10F limited him to simple tasks while the ALJ stated in his written decision that Mr. Chrismon could do "simple and some complex tasks." App. Vol. 2 at 21. His objection overlooks specific language in the exhibit. Although it may appear to Mr. Chrismon that the ratings indicating he is moderately limited in carrying out "detailed instructions" but not "very short and simple instructions," App. Vol. 3 at 306, rule out all complex tasks, the medical source herself went on to clarify that Mr. Chrismon could "perform . . . simple and some complex tasks," *id.* at 308, just as the ALJ found.[6]

5. **Failure to include cognitive testing results in hypothetical**

Mr. Chrismon objects that the hypothetical to the VE did not include the results of some cognitive testing done during his hospitalization in 2009. *See* App. Vol. 3 at 347. The magistrate judge noted that the ALJ had specifically cited these

---

[6] Even accepting Mr. Chrismon's interpretation of the exhibit, the conclusion he draws—that the inconsistency between an unqualified restriction to simple work conveyed to the VE and a looser allowance for simple and some complex work in the ALJ's decision reflects reversible error—would not follow in any event. On Mr. Chrismon's view, the VE identified jobs he could perform despite a *stricter* limitation on vocational complexity than the ALJ ultimately found was necessary to impose. How this could possibly have prejudiced him escapes us. Alleged "errors" that favor the claimant are not grounds for reversal. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding ALJ does not commit reversible error when full force of evidence adverse to claimant is tempered in claimant's favor).

results and had found they supported a restriction to "simple, repetitive tasks," App. Vol. 2 at 24. The magistrate judge concluded it was "abundantly clear that the ALJ considered the evidence and weighed it in formulating the RFC," App. Vol. 1 at 48. That is correct as far as it goes, but it does not address the thrust of Mr. Chrismon's objection, which is that the ALJ did not convey the test results to the VE.

The VE need not consider the contents of every medical report in the record. Rather, the VE must take into account the functional limitations properly *found by the ALJ* on the basis of the record: a hypothetical posed to the VE is sufficient if "it contained all of the limitations *found to exist by the ALJ*." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (emphasis added). Although the ALJ may err by failing to properly determine the full range of limitations in the first place, that is a separate issue. Mr. Chrismon does not argue that that the relevant functional limitation the ALJ included in his hypothetical to the VE was improperly derived from the reported testing results, only that the results themselves should have been included.

That is not the end of matter, however, because the ALJ did not include his own restriction to "simple, repetitive tasks" in the hypothetical to the VE. Although Mr. Chrismon does not fault the ALJ for this specific omission, it is integrally related to the objection he does make about not conveying the 2009 cognitive test results. We conclude the omission does not require reversal, however, because any error was harmless.

- 12 -

All four jobs identified by the VE had an SVP (specific vocational preparation) rating of two, involving unskilled work "'which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Id.* (quoting 20 C.F.R. §§ 404.1568(a)). And two had the most basic reasoning-level demands, requiring only a "commonsense understanding to carry out simple one- or two-step instructions," DOT App. C, Part III: motel housekeeper, DOT code 323.687-014; and optical assembler, DOT code 713.687-018. The national economy has 180,000 and 32,000 positions, respectively, for these jobs (15,000 and 2,500 regionally). *See* App. Vol. 2 at 27, 46-47. These "significant numbers" satisfy the Commissioner's burden at step five. 42 U.S.C. § 423(d)(2)(A).

Any error in failing to convey the test results to the VE was therefore harmless because at least two of the four jobs identified by the VE are consistent with the restriction of "simple, repetitive tasks." *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that improper reliance on two of three jobs identified by VE could have been deemed harmless error "had the number of available jobs identified by the VE [in the one occupation consistent with the claimant's RFC] not been one hundred but considerably greater"); *see, e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (applying *Allen* to find harmless error under similar circumstances, holding that "even if we consider only the[] two jobs [that properly matched the claimant's RFC] out of the four considered by the ALJ" no "reasonable factfinder

- 13 -

could have determined that suitable jobs did not exist in significant numbers" at step five).

## C. Treatment of Medical-Source Opinion

Mr. Chrismon argues that the ALJ erred in considering the medical source opinions. We agree. The ALJ's analysis was legally inadequate and unsupported by the administrative record.

After eight months of treatment, Mr. Chrismon's treating psychiatrist and his licensed professional counselor filled out a mental residual functional capacity assessment form noting many marked and moderate limitations that the VE indicated would likely preclude him from working.[7] *See* App. Vol. 3 at 385-87. The ALJ summarily discounted this assessment through a truncated analysis that (1) did not follow the prescribed procedure for evaluating medical source opinions and (2) was not supported by the administrative record.

"Our case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. "The initial determination the ALJ must make with respect to a treating physician's

---

[7] The VE's only reservation was that the ratings used, though the same as those used on agency forms ("not significantly," "moderately," and "markedly" limited), were not defined and hence might not have been understood in precisely the same way as agency ratings. App. Vol. 2 at 48-51.

medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates." *Id.* (internal quotation marks omitted). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* But "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference."[8] *Id.* Thus, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the [applicable] regulations for this particular purpose, for the weight assigned." *Id.* If this procedure is not followed, a remand is required. *Id.*

Here the ALJ did not follow this procedure. Rather, the ALJ decision collapsed the two-step inquiry into a single point, stating only that he "gives this opinion little weight" because "longitudinal mental health records were not submitted as evidence on this record" and "[t]hus the basis of this opinion, if any, cannot be assessed or reviewed." App. Vol. 2 at 25-26. The decision does not mention the controlling-weight question at all. Although we could perhaps read a reference to the absence of supporting longitudinal records as an implicit finding that the opinion lacked the "medically acceptable clinical or laboratory diagnostic techniques" to qualify as controlling under 20 C.F.R. §§ 404.1527(d)(2), 416.912(d)(2), that would

---

[8] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4 (1996).

still leave undone the second step of the analysis, which is governed by the distinct set of factors set out in *id.* §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6). *See Krauser*, 638 F.3d at 1330-31 (explaining that "a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry," which "is governed by its own set of factors"). Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review.

In addition to this analytical deficiency, the administrative record does not support the substantive basis for discounting the opinion. Mr. Chrismon properly submitted, and the Appeals Council properly accepted, the longitudinal treatment notes underlying the treating source opinion. *See generally O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994) (discussing 20 C.F.R. § 404.970(b)). At that point the sole ground invoked by the ALJ for discounting the opinion ceased to apply. And the Appeals Council did not fill the gap (or remand for the ALJ to do so); it simply denied review without any analysis of the treating source opinion in light of the new records.

The magistrate judge dismissed this problem by noting that Mr. Chrismon had not challenged the Appeals Council's decision for failing to explain why the new evidence did not affect the ALJ's handling of the treating source opinion. But Mr. Chrismon's objection to the ALJ's treatment of the medical source opinions is sufficient for us to review this issue. Our precedent holds that the Appeals Council is

not required to justify denying review in this situation and hence no reversible error

can be ascribed to it on this basis:

> While an express analysis of the Appeals Council's determination
> would have been helpful for purposes of judicial review, [the claimant]
> points to nothing in the statutes or regulations that would require such
> an analysis where new evidence is submitted and the Appeals Council
> denies review. We therefore reject [the claimant's] contention that the
> Appeals Council erred by failing to specifically discuss [the newly
> submitted] treatment records.

*Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006).

Judicial review of the agency decision proceeds in this situation by simply

including the new evidence in the administrative record against which the ALJ's

decision is evaluated. As *Martinez* explained:

> Because the Appeals Council considered [the supplemental]
> treatment records, the records are a "part of the administrative record to
> be considered by this court when evaluating the ALJ's decision for
> substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.
> 1994); *accord Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir.
> 2003). We must therefore consider the entire record, including [the
> new] treatment records, in conducting our review for substantial
> evidence on the issues presented.

*Id.* at 1208 (alterations in original omitted).

We are left with a treating source opinion, potentially dispositive as to

disability, which the ALJ rejected for a reason the administrative record cannot

support. The Commissioner attempts to shore up the deficiency by offering

alternative justifications for the ALJ's conclusion, but post hoc rationales run afoul

of the general rule that we cannot uphold the agency's decision on grounds not

provided by the agency itself. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Harmless error is not viable here because we cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the [issue] in any other way." *Allen*, 357 F.3d at 1145. The Commissioner does not contend, nor do we conclude, that the post hoc justifications she offers—and Mr. Chrismon vigorously disputes—meet this exacting standard. Accordingly, we remand the matter for consideration in light of the full administrative record.

**D. Credibility**

We do not address Mr. Chrismon's challenge to the ALJ's assessment of his credibility—that his complaints "are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." App. Vol. 2 at 22. This assessment is linked to the ALJ's rejection of the medical opinion discussed immediately above. Proceedings on remand may affect the proper analysis of Mr. Chrismon's credibility.

The judgment of the district court is reversed and the matter is remanded with directions to remand, in turn, to the agency for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge