**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD F. KRAUSER,

  Plaintiff-Appellant,

v.                                                    No. 10-5103

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

  Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:08-CV-00422-TLW)**

---

Submitted on the briefs:[*]

Richmond J. Brownson, Timothy M. White, Tulsa, Oklahoma, for
Plaintiff-Appellant.

Thomas Scott Woodward, United States Attorney, Cathryn McClanahan, Assistant
United States Attorney, Michael McGaughran, Regional Chief Counsel, Region
VI, Eric D. Poole, Special Assistant United States Attorney, Office of the General
Counsel, Region VI, Social Security Administration, Washington, D.C., for
Defendant-Appellee.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Plaintiff Richard F. Krauser appeals from a district court order, issued by the magistrate judge on consent of the parties under 28 U.S.C. § 636(c), affirming the Commissioner's decision to deny social security disability and supplemental security income benefits. We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence, *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), though "our review . . . is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996). We reverse and remand for the reasons explained below.

### I. Agency Decision

The Administrative Law Judge (ALJ) denied benefits at the last step of the five-step sequential process for determining disability. *See Fischer-Ross*, 431 F.3d at 731 (summarizing process). The ALJ found that (1) Mr. Krauser had not engaged in substantial gainful activity since the alleged onset date of disability on November, 28, 2003; (2) Mr. Krauser is severely impaired from degenerative joint disease, diabetes, hepatitis B and C, and hypertension; (3) these impairments do not meet or equal any of the per se disabling impairments listed in

20 C.F.R. Part 404, Subpart P., App. 1; (4) Mr. Krauser has the residual functional capacity (RFC) to perform medium work, but is unable to perform his past relevant work as a truck driver and construction worker; and (5) considering his age, education, transferable work skills, and RFC, Mr. Krauser can perform other occupations, identified by a vocational expert (VE), that exist in significant numbers in the regional and national economy, such as delivery driver, hand packager, janitor, laundry sorter, cleaner, clerical mailer, and order clerk.

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for our review. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). It did, however, accept and consider certain additional evidence submitted by Mr. Krauser, concluding that it did not provide a basis for altering the ALJ's determination.

## II. Challenges to Agency Decision

Mr. Krauser argues that the ALJ's determination of non-disability must be reversed, because it rests on a failure to properly consider all of his impairments (in particular, a depression impairment disregarded as medically indeterminable); on an incorrect analysis of the opinions of his treating physician; on an improper assessment of his credibility; and on an erroneous determination at step five resulting from an inadequate hypothetical inquiry to the VE. We take up these contentions in the order presented.

**A. Rejection and/or Failure to Develop Evidence of Depression Impairment**

The analysis of this issue is divided into two parts, one based on the record before the ALJ and the other based on the augmented record before the Appeals Council. As to the former, we agree with the district court that Mr. Krauser had not presented evidence demonstrating the existence of a medically determinable impairment. There was no medical testing for, let alone diagnosis and treatment of, any impairment regarding depression. Indeed, a report from Mr. Krauser's treating physician shortly before the hearing specifically noted "no abnormal findings" where indications of various psychological conditions, including depression, were to be assessed. App. Vol. 2 at 390. A couple of isolated, passing references to depression buried in the record hardly suggested that the medical personnel who examined Mr. Krauser had missed or ignored a serious mental illness,[1] undercutting his contention that the ALJ should have sent him for a consultative examination. There simply was not "evidence sufficient to suggest

---

[1]    Mr. Krauser refers to documentation from his incarceration years earlier as indicating a problem with depression, but it actually undermines his claim. He cites his response of "sometimes" to a prison intake questionnaire asking whether he ever felt he was "going crazy or ha[d] a serious mental problem," App. Vol. 2 at 384, but that does not focus on any particular condition. And, as to depression, the questionnaire goes on to note he was never treated for it and had no problems. *Id.* at 382, 384. Mr. Krauser also notes that in 2006 he told an agency clerk he was "sitting around getting depressed," *id.* at 147, but that hardly suggests a serious mental health condition. Finally, he once mentioned to his treating physician that he felt depressed, in January 2007, *id.* at 238-39, but no treatment or testing was done and there is no further mention of it in his medical records.

a reasonable probability that a severe impairment exist[ed]." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (setting out claimant's burden to demonstrate issue requiring development by Commissioner); *Cf. Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996) (noting Commissioner had a duty to develop issue where medical records showed depression had been diagnosed).

After the ALJ issued his decision on October 31, 2007, Mr. Krauser sought and obtained a referral for possible depression, "reporting he feels sad all the time because of his current economic and health situation." App. Vol. 2 at 397. A medical report from January 18, 2008, notes a diagnosis of major depression and a prescription for an anti-depressant. *Id.* at 398-99. Mr. Krauser argues that in light of this new evidence, submitted to and considered by the Appeals Council, he had either established a medically determinable mental impairment or at least demonstrated the existence of an issue that required further development.

Because of the circumstances of its admission, the proper treatment of this evidence is somewhat unclear, as it implicates a potential tension in our case law. The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider additional evidence offered on administrative review–after which it becomes a part of our record on judicial review–if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (discussing 20 C.F.R. §§ 404.970(b), 416.1470(b)). If the evidence does not

-5-

qualify, the Appeals Council does not consider it and it plays no role in judicial review. *Id.* Here, the district court held that the new evidence submitted to the Appeals Council failed to satisfy the third requirement because it "pertained to dates after the ALJ's final decision," and, therefore, "cannot be given merit in evaluating plaintiff's alleged mental impairment." App. Vol. 1 at 43. This ruling begs the question: who decides whether evidence qualifies as new, material, and related to the relevant period?

One line of our cases suggests that we do: we have repeatedly held that whether evidence is "new, material and chronologically pertinent is a question of law subject to our *de novo* review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *see Chambers*, 389 F.3d at 1142. But we have also held that when the Appeals Council *accepts* additional evidence, that is "an implicit determination [that it is] . . . qualifying new evidence," requiring the Appeals Council to consider it and this court to include it in our review of the ALJ's decision, without separate consideration of the requirements for qualification. *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006); *Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008); *Foy v. Barnhart*, 139 F. App'x 39, 41-42 (10th Cir. 2005). These two lines of cases do not clash where the Appeals Council *rejects* new evidence as non-qualifying and the claimant challenges that ruling on judicial review–in that event, *Martinez* does not apply and our general rule of de novo review permits us to resolve the matter and remand if the Appeals

-6-

Council erroneously rejected the evidence. *Chambers*, 389 F.3d at 1142. But, as has been remarked, our cases do present a potential conflict if the Appeals Council *accepts* new evidence: do we revisit the matter de novo (per *Threet*) or are we bound by the agency's decision to accept the evidence (per *Martinez*)? *See Haddock v. Astrue*, No. 08-cv-00393-PAB, 2009 WL 3162170, at *11 n.2 (D. Colo. Sept. 29, 2009).

Identifying the limited ground of potential conflict here actually suggests the path out of it. When the Appeals Council accepts new evidence, the claimant obviously benefits (he may not succeed with such evidence, but that is a separate issue), hence the only "aggrieved" party that could object is the agency. But the agency would be objecting to its own ruling. In supporting a denial of benefits on judicial review by challenging its own rulings as to the admission of the evidence on which the denial was based, the agency would inherently be offering a new, post-hoc rationale for its decision contrary to the general rule of *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943), and *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). *See generally Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Hackett v. Barnhart*, 475 F.3d 1166, 1174-75 (10th Cir. 2007). Thus, there may be good reason to hold the agency to its own decision when the Appeals Council accepts new evidence, even though we exercise de novo review when the claimant challenges the Appeal Council's rejection of such evidence.

We need not definitively resolve the matter here, however, since we can in

any event affirm the ALJ's rejection of a depression impairment even with the new evidence considered by the Appeals Council augmenting our record. As noted above, the only evidence of diagnosis and treatment of depression is in a report prepared two and a half months after the ALJ's decision. And that report does not purport to retroactively diagnose a condition existing in the period preceding the ALJ's decision, much less does it indicate any impaired functioning relating back to that period. Indeed, Mr. Krauser's post-decision complaints in this regard are expressly framed in terms of his then-current circumstances (worsened economically by the ALJ's decision itself): "Patient reports he is currently overwhelmed by his condition" and "report[s] he feels sad all the time because of his current economic and health situation." App. Vol. 2 at 397. It bears repeating that there were no indications of depression in Mr. Krauser's medical records in the months immediately leading up to the hearing before the ALJ; rather, his doctor specifically noted he had no psychological abnormalities. Finally, Mr. Krauser mentioned being depressed just once, in passing, at the hearing before the ALJ, *id.* at 51 ("I'm depressed, you know, feel pretty well useless in life."), admitted that he had never been tested or treated for depression, *id.*, and never suggested any functional impairment in this regard. On this record, we cannot say the ALJ erred in his handling of the issue of depression.[2]

---

[2]     Mr. Krauser sometimes mentions anxiety in conjunction with depression

(continued...)

That, of course, does not deny the reality of the evidence indicating that Mr. Krauser has since developed a condition that could impact a determination of disability for a period following the decision in this case.  Ordinarily, this would be relevant only to a new application for benefits commencing after the ALJ's decision here.  But, as explained below, we remand this case to the Commissioner for further proceedings in light of other error, extending the potential period of disability through the next date of decision, *see* 20 C.F.R. §§ 404.620(a), 416.330 (providing that applications for disability benefits remain in effect until ALJ issues final decision); *id.* §§ 404.984(a), 416.1484(a) (providing that, if case is remanded by courts for further consideration, ALJ's decision on remand becomes final decision of Commissioner).  Accordingly, the ALJ should consider the impact of the new evidence of depression on the determination of disability for that additional period.  *Cf. Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (remanding for further proceedings on account of other error and noting agency will need to determine effect of new evidence submitted in the interim).

---

[2](...continued)
when objecting to the ALJ's analysis of his mental condition.  He does not, however, present an argument on this alternative point that is sufficiently developed to warrant appellate review.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 n.2 (10th Cir. 1994).  In any event, the case for impairment on the basis of anxiety is even weaker than the case for depression.

**B. Analysis of Treating Physician Opinions**

Just weeks before the ALJ hearing, Mr. Krauser's treating physician, Dr. Lambert, filled out a questionnaire specifying various work-related limitations attributed to the pain and fatigue associated with his impairments. Among these were significant exertional restrictions: sitting limited to four hours per day, standing/walking limited to one to two hours per day, a need to alternate position frequently to relieve pain, a need to lie down periodically throughout the day to relieve pain, and a restriction to part-time work. App. Vol. 2 at 215. In addition, Dr. Lambert noted that pain would interfere with Mr. Krauser's pace of work and completion of tasks in a timely manner, that he could be expected to be absent from work more than three times a month, and that pain medication (Mr. Krauser takes narcotic pain relievers) would interfere with his ability to concentrate or reason effectively. *Id.* at 216. The obvious impact of such limitations was confirmed at the hearing by the VE, who stated that Mr. Krauser could not work if Dr. Lambert's opinions were accepted.

Our case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct. Here, the ALJ simply stopped after the first step, and post-hoc efforts of the Commissioner and the magistrate judge to work through the omitted second step for the ALJ are

prohibited by the *Chenery* principle we have already touched on above.

The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded "controlling weight," on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96-2p, 1996 WL 374188, at \*2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it is not to be given controlling weight.

But finding such deficiencies to resolve the controlling-weight question against a claimant does not end the inquiry. Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned. *Watkins*, 350 F.3d at 1300-01. If this is not done, a remand is required. *Id.* at 1301. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source
> medical opinion is not well-supported by medically acceptable
> clinical and laboratory diagnostic techniques or is inconsistent with
> the other substantial evidence in the case record *means only that the
> opinion is not entitled to "controlling weight," not that the opinion*

> *should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

SSR 96-2p, 1996 WL 374188, at *4 (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis"). This second inquiry is governed by its own set of factors, summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted).

Here, the ALJ concluded that Dr. Lambert's questionnaire failed to satisfy the conditions for controlling weight: it did not reference records of objective testing and it was inconsistent with other evidence, including her treatment records. App. Vol. 2 at 21. The first point is flatly incorrect: Dr. Lambert referenced the x-rays taken for the degenerative joint problems and the blood work for the liver problems (all done after she began treating Mr. Krauser in January 2007), *id.* at 215, while noting that records prior to 2007 had not been available for review, *id.* at 216. The second point is stated in conclusory fashion, without reference to "those portions of the record with which [Dr. Lambert's] opinion was allegedly inconsistent." *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand.[3] The decision not to give controlling weight to Dr. Lambert's opinion is not our primary concern with the analysis here. Even leaving aside the noted complications with the grounds cited for that decision, the ALJ's assessment of Dr. Lambert's opinion is patently

---

[3] In particular, the ALJ should identify what in Dr. Lambert's own treatment records he finds inconsistent with her specific opinions in the questionnaire, and explain the inconsistency. For example, the Commissioner notes Mr. Krauser reported "fair pain control" with narcotic medication, App. Vol. 2 at 223, but that just begs the question of how and to what extent such a limited indication of pain relief necessarily conflicts with the doctor's assessment of the remaining impact that pain has on Mr. Krauser's functional abilities.

-13-

inadequate for the distinct reason that it ends halfway through the required two-step analysis:  the ALJ simply concluded that "Dr. Lambert's opinion . . . cannot be given controlling weight" and then *said no more about it.  Id.* at 21. Just as in *Watkins*,

> the ALJ failed to articulate the weight, if any, he gave Dr. Lambert's opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether. . . .  We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.

350 F.3d at 1301.

Finally, while not dispositive, there is a prominent red herring in the ALJ's discussion of Dr. Lambert's opinion that should be identified so that it plays no role in subsequent proceedings.  The ALJ stated that Dr. Lambert "opined that the claimant was not able to perform even sedentary work activity," and then went on to admonish "that some issues are not medical issues, but are administrative findings.  An example of such an issue is what an individual's residual functional capacity [RFC] is.  Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance[.]" App. Vol. 2 at 21.  Dr. Lambert did not give any opinion on RFC.  She found specific work-related functional limitations, and then the ALJ determined the consequences of those medical findings for purposes of RFC, i.e., that with those limitations, Mr. Krauser would not be able to perform sedentary work.  That is

-14-

precisely how the inquiry should proceed, with the treating physician performing her medical role and the ALJ left to his role as adjudicator. Of course the medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC–they always do, because that is what they are for–but that does not make the medical findings an impermissible opinion on RFC itself. If doctors could only give opinions on matters that could not affect RFC, medical opinions would be inherently useless in disability determinations.

## C. Credibility Determination

The ALJ noted that "[i]n view of his degenerative joint disease, diabetes, hepatitis B, hepatitis C, and hypertension, [Mr. Krauser] would undoubtedly have some difficulties," App. Vol. 2 at 21, but discredited his complaints of significantly limiting pain and fatigue and concluded that a medium RFC was reasonable, *id.* at 20, 21-22. This finding as to Mr. Krauser's credibility may be undercut by reconsideration on remand of the treating physician's opinions, which clearly support his subjective complaints–indeed, if those opinions were deemed controlling, Mr. Krauser would, by the VE's own testimony, have to be found disabled, obviating further inquiry into Mr. Krauser's credibility. Nevertheless, we consider it appropriate to clarify a few points in case his credibility continues to be material but must be reassessed in light of substantial (but non-controlling) weight given to any of the treating physician's relevant opinions.

The ALJ quite rightfully noted Mr. Krauser's admission that his hepatitis,

diabetes, and hypertension were under control with medication, though the ALJ did not mention that Dr. Lambert also indicated that chronic hepatitis was still "likely to contribute to progressive pain and fatigue," App. Vol. 2 at 216. In any event, the primary impairment here relates to Mr. Krauser's arthritic conditions, which have been treated with narcotic medication for some time. A significant but problematic aspect of the ALJ's rationale for discounting Mr. Krauser's subjective complaints of pain and related limitations had to do with his daily activities, which were recited twice in the ALJ's decision: "In a typical day, the claimant stated that he exercised, watched television, did yard work, helped with housework, and did his own laundry." *Id.* at 20; *see id.* ("In fact, the claimant testified that he was able to exercise, work in the yard, do laundry, perform housekeeping chores, and drive."). On its face, that summary, particularly daily yard work, exercise, and housework, does sound inconsistent with the degree of impairment voiced by Mr. Krauser and his doctor. But the specific facts behind the generalities paint a very different picture.

First of all, the suggestion of substantial work in the yard on a daily basis is simply false. Mr. Krauser actually said that once every week or two he spends ten to fifteen minutes working in the yard. *Id.* at 40, 46-47. As for helping with housework (he lives with his sister and her husband), it is necessary to look at the actual activities he was talking about, and Mr. Krauser specifically testified he did not sweep floors, did not do any cooking, only put dishes in the dishwasher,

-16-

could just make a bed "halfway," and was unable to pick up things off the floor. *Id.* 40-41; 43-44. The same need to assess generality in light of specifics is true of the reference to exercise: Mr. Krauser said he can only exercise for four or five minutes at a time, which he tries to do several times a day. *Id.* at 47. As for watching television, that is hardly inconsistent with Mr. Krauser's allegations of pain and related concentration problems. *See Hamlin*, 365 F.3d at 1221. Thus, when considered at a more detailed realistic level, Mr. Krauser's activities are more consistent with his claims of significant physical limitation than with the ALJ's conclusion that he is capable of full-time work at the medium exertional level. On remand, the ALJ should keep in mind that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity," *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

**D. Propriety of Step Five Determination – VE Hypothetical**

Mr. Krauser has two basic objections regarding the hypothetical question posed to the VE on which the ALJ based his step-five finding of no disability. The first, involving a misunderstanding of our case law, is meritless, while the second is effectively mooted by our disposition of other issues on this appeal.

First, citing *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996), he objects that by merely relying on the VE's identification of jobs accommodating the functional capacity and restrictions set out in the hypothetical, without a

delineation of and explicit comparison with the corresponding demands of the jobs in question, the ALJ improperly delegated the dispositive determination to the VE. That would be a legitimate objection had the determination occurred, as it did in *Winfrey*, at step four of the sequential analysis, which narrowly focuses on whether the claimant can return to the particular work he has done in the past. But the analysis at step five is different, as we have repeatedly explained:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.

*Berna*, 101 F.3d at 633 (quoting *Winfrey*, 92 F.3d at 1025). Proceeding by way of hypothetical inquiry to the VE at step five was entirely proper.

Second, Mr. Krauser objects that the hypothetical inquiry failed to incorporate all of the impairments and limitations he contends should have been recognized by the ALJ. This objection is obviously mooted by our earlier holding that the case must be remanded for further consideration of the impairments and limitations at issue.

The judgment issued by the magistrate judge on behalf of the district court is REVERSED and the cause is REMANDED to the district court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.