FILED
United States Court of Appeals
Tenth Circuit

September 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NATHANIEL VERGARA,[*]

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 13-2020
(D.C. No. 1:11-CV-00764-WDS)
(D. N.M.)

**ORDER AND JUDGMENT**[**]

Before **TYMKOVICH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

---

[*] In accordance with Fed. R. App. P. 43(b), Nathaniel Vergara is substituted for Marion Loera, on behalf of N.V., as the plaintiff-appellant in this action. Plaintiff-Appellant's counsel has advised this court that the caption should include Mr. Vergara's full name. Further, in accordance with Fed. R. App. P. 43(c)(2), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Nathaniel Vergara ("Claimant") appeals from a district court order issued by a magistrate judge under 28 U.S.C. § 636(c). The order upheld the Commissioner's decision to deny supplemental security income (SSI) benefits based on childhood disability.

We independently review the Commissioner's decision to determine whether it is free of legal error and supported by substantial evidence. *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). Exercising jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291, we reverse and remand for further proceedings.

## I. BACKGROUND

In April 2005, when Claimant was eleven years old, his mother applied for SSI benefits on his behalf. She alleged that he became disabled in February 2001 due to a learning disability that caused him difficulties in school. The agency denied benefits initially and on reconsideration. Claimant's mother then requested and received a hearing before an administrative law judge (ALJ).

The ALJ issued an unfavorable ruling, finding Claimant not disabled at step three of the three-step sequential evaluation process for determining childhood disability. *See Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1298 (10th Cir. 2011) (citing 20 C.F.R. § 416.924); *cf. Sullivan v. Zebley*, 493 U.S. 521, 526 (1990) (observing that "test for determining whether a child claimant is disabled is an abbreviated version of the adult [5-step] test"). The Appeals Council, however,

issued an order vacating the ALJ's decision and remanding the case for further proceedings.

The ALJ held a second hearing and, in September 2009, again denied benefits at step three. Under the three steps, a child under eighteen years of age is "disabled" and eligible for SSI benefits if the child (1) is not doing substantial gainful activity (SGA); (2) has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the listings for disability (20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings)), and otherwise meets the applicable duration requirement. 20 C.F.R. § 416.924(a)-(d); *see also id.* § 416.906 (specifying duration requirement).

Here, the ALJ found at step one that Claimant had not engaged in SGA at any time relevant to his application for benefits. At step two, the ALJ assessed Claimant with a severe combination of attention deficit hyperactivity disorder (ADHD), hearing loss, and a learning disorder. But at step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the listings. The ALJ therefore found Claimant not disabled and denied benefits.

The Appeals Council denied review, making the ALJ's 2009 decision the Commissioner's final decision for judicial review. *Krauser*, 638 F.3d at 1327. The Appeals Council accepted and considered additional evidence (dated April 2008 to

- 3 -

July 2010) submitted by Claimant's mother, but concluded that the additional evidence did not provide a basis for altering the ALJ's determination. Aplt. App. at 90-91, 93. The district court upheld the denial of benefits, and this appeal followed. Claimant challenges the ALJ's step-three determination that his severe impairments do not result "in limitations that functionally equal the listings." 20 C.F.R. § 416.926a.[1]

## II. DISCUSSION

**A.** *Legal Background on Functional Equivalency*

Title 20 C.F.R. § 416.926a governs functional equivalence. When a child's "severe impairment or combination of impairments . . . does not meet or medically equal any listing," the ALJ "will decide whether it results in limitations that functionally equal the listings." *Id.* § 416.926a(a). *Cf. id.* § 416.926a(d) (explaining that ALJ does "not compare [the child's] functioning to the requirements of any *specific* listing" (emphasis added)). A "severe impairment or combination of impairments" "functionally equals the listings" if it causes "marked limitations" in at least two of the six domains of functioning or an "extreme limitation" in at least one of the six domains. *Id.* § 416.926a(a) (internal quotation marks omitted).[2]

---

[1] Claimant does not challenge the ALJ's step-three conclusion that he does not have an impairment or combination of impairments that meets or medically equals any one of the listings. The ALJ considered listings sections 112.11 (ADHD), 102.00 (Hearing Loss), and 112.00 (Learning Disorder).

[2] The ALJ will find a "'marked' limitation in a domain when [the child's] impairment(s) *interferes seriously* with [his] ability to independently initiate, sustain,

(continued)

- 4 -

The ALJ first considers how the child functions as a whole. This consists of looking at all of the child's "activities," which include everything the child does "at home, at school, and in [his] community," and evaluating "how appropriately, effectively, and independently" he functions compared to children the same age who do not have impairments. *Id.* § 416.926a(b); *see also id.* § 416.926a(c) ("[W]e will look first at [the child's] activities and [his] limitations and restrictions."); Social Security Ruling (SSR) 09-1p, 2009 WL 396031, *1 (Feb. 17, 2009) (explaining that first step in functional-equivalence evaluation is assessing "child's functioning without considering the domains or individual impairments").

Among other things, the ALJ evaluates what the child cannot do, has difficulty doing, needs help doing, or is restricted from doing because of the child's impairment(s), 20 C.F.R. § 416.926a(a); how well he initiates, sustains, and completes his activities, *id.* § 416.924a(b)(5); and the effects of medication, *id.* § 416.924a(b)(9)(i)(E). *See also id.* § 416.926a(a) (observing that ALJ "will assess the interactive and cumulative effects of all of the [child's] impairments . . . ., including any impairments" the child has "that are not 'severe'").

The ALJ then evaluates the impact of the child's impairment(s) by rating the degree to which the impairment(s) limit(s) functioning (in other words, "activities")

---

or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). The ALJ will find "an 'extreme limitation' in a domain," when the child's "impairment(s) *interferes very seriously* with [his] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i) (emphasis added).

- 5 -

in the following six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id.* § 416.926a(b); SSR 09-1p, 2009 WL 396031, *2 (After identifying which of the child's "activities . . . are limited, we determine which domains are involved in those activities. We then determine whether the child's impairment(s) could affect those domains and account for the limitations. . . . [Finally,] we . . . rate the severity of the limitations in each affected domain.").

## B. *ALJ Decision and Claimant's Issues*

Here, the ALJ determined that Claimant's impairments result in "marked limitations" in only one of the six domains—acquiring and using information. Aplt. App. at 115. The ALJ found Claimant's impairments result in "less than marked limitations" in the domains of attending and completing tasks, interacting and relating with others, and health and physical well-being. *Id.* at 116-17, 120. He found Claimant's impairments result in "no limitations" in the domains of moving about and manipulating objects and the ability to care for oneself. *Id.* at 118-19.

On appeal, Claimant asserts that the ALJ's findings in two domains, (1) attending and completing tasks and (2) interacting and relating to others, "were based on incorrect legal standards and not supported by substantial evidence." Aplt. Opening Br. at 21. He contends that the ALJ failed to resolve evidentiary conflicts and ignored contradictory evidence.

We reach only the attending-and-completing-tasks domain and, in doing so, reach only one of the pieces of evidence Claimant cites in support of his position: the opinion of state agency psychiatry consultant E. Chiang, M.D. Dr. Chiang opined that Claimant's severe impairments cause "marked" limitations in the domain of attending and completing tasks. Aplt. App. at 379.

**C.** *Attending and Completing Tasks and Dr. Chiang's Opinion*

Attending and completing tasks refers to how well a child is able to focus and maintain attention, and how well the child begins, carries through, and finishes activities, including the pace the child performs activities and the ease the child changes activities. 20 C.F.R. § 416.926a(h); *see also* SSR 09-4p, 2009 WL 396033 (Feb. 18, 2009) ("consolidate[ing] information . . . about the functional equivalence domain of 'Attending and completing tasks'"). The regulations also describe age-appropriate behaviors and expectations relevant to this domain. 20 C.F.R. § 416.926a(h)(2)(iv) ("age 6 to attainment of age 12"); *id.* § 416.926a(h)(2)(v) ("age 12 to attainment of age 18").

In finding Claimant's limitations in this domain "less than marked," the ALJ stated:

> The claimant's mother testified at the [2009] hearing that her son was doing better in completing his homework, cleaning his room, and caring for and feeding his dog, but he still had to be prompted. Based on an October 3, 2008 evaluation [entitled Los Lunas Schools Individualized Education Program], the examiner wrote that the claimant . . . works well in class some days and is very capable of completing work, and identified this as a great potential that needs to be harnessed in a positive manner. Further, she said that the claimant gets along well

with peers and teachers most of the time. He also helps neighbors with their yards. She also stated that he can be lazy.

Aplt. App. at 116.

Claimant submits that the record contains evidence contradicting the ALJ's less-than-marked finding in the attending-and-completing-tasks domain and argues that the ALJ failed to follow applicable rules of law in weighing particular types of evidence. In particular, Claimant asserts that the ALJ erroneously failed to discuss Dr. Chiang's opinion. We agree.

ALJs must consider all medical opinions in the record. *See* 20 C.F.R. § 416.927(c). "State agency medical and psychological consultants and . . . other medical specialists are highly qualified" and serve as "experts in Social Security disability evaluation." *Id.* § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . and other medical specialists as opinion evidence," and "evaluate [their] findings using the relevant factors in paragraphs (a) through (d) of [§ 416.927]." *Id.* § 416.927(e)(2)(i), (ii).

"Unless a treating source's opinion is given controlling weight,"[3] the ALJ "*must explain* in the decision the *weight given* to the opinions of a State agency medical or psychological consultant . . . or other medical specialist." *Id.* § 416.927(e)(2)(i), (ii) (emphasis added); *see also* SSR 96-6p, 1996 WL 374180, *2

_____

[3] In this case, the ALJ did not explicitly give controlling weight to a treating source's opinion.

(July 2, 1996) (observing that ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they *may not ignore these opinions* and *must explain* the weight given to the opinions in their decisions") (emphasis added)).

In this case, the ALJ did not mention Dr. Chiang's opinion.[4] Claimant asserts that the ALJ's failure to discuss Dr. Chiang's opinion violates the regulatory requirement that the ALJ explain the weight given to a state agency medical consultant's opinion. We agree. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . ., and whether he applied the correct legal standards to arrive at that conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also id.* at 1009-10 (remanding for ALJ to weigh evidence and give reasons for rejecting medical evidence). Accordingly, we reverse and remand for the ALJ to explain what weight should be given to Dr. Chiang's opinion. *See Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (observing that failure to apply the correct legal standards is grounds for reversal).[5]

---

[4] We note that in 2008, when the Appeals Council vacated the ALJ's first decision, it instructed the ALJ on remand to "address and *explain* the weight given to the opinion evidence (20 CFR 416.927)." Aplt. App. at 181 (emphasis added).

[5] Because additional proceedings on remand may affect the ALJ's severity ratings in each affected domain, we do not reach Claimant's other arguments that the ALJ should have found marked limitations in the domains of attending and completing tasks and interacting and relating to others. Our reasoning is two-fold.

(continued)

### III. CONCLUSION

We reverse and remand this case to the district court with directions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

First, on remand the ALJ "should consider the impact of the new evidence" that Claimant's mother submitted to the Appeals Council after the ALJ's 2009 decision "on the determination of disability." *Krauser*, 638 F.3d at 1329. Second, because determining functional equivalence accounts for "the interactive and cumulative effects" of the child's impairments, a revised severity rating on remand in one domain may affect the ALJ's rating(s) in other domain(s). SSR 09-1p, 2009 WL 396031, *2; *see also* 20 C.F.R. § 416.926a(c) ("Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given impairment may have effects in more than one domain . . . .").