**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CURTIS JOHNSON,

      Plaintiff - Appellant

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant - Appellee.

No. 15-5021
(D.C. No. 4:14-CV-00029-PJC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

    Curtis Johnson appeals from a district court order, issued by the magistrate

judge under 28 U.S.C. § 636(c)(1), upholding the Commissioner's denial of Title II

Social Security disability benefits. Focusing on the issues properly raised

by Johnson, we review the Commissioner's decision to determine whether it is free of

legal error and supported by substantial evidence. *Krauser v. Astrue*, 638 F.3d 1324,

1326 (10th Cir. 2011). Concluding that to be the case, we affirm.

---

   * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

**GENERAL BACKGROUND**

A brief summary of undisputed facts regarding the course of Johnson's treatment will help place our discussion of the issues engaged by the parties in context. Johnson injured his back in September 2005. Lumbar x-rays and an MRI revealed two ruptured discs and three bulging discs as well as underlying degenerative arthritis. An orthopedic surgeon, Dr. Emil Milosavljevic ("Milo"), recommended additional lower-back imaging in February 2006, but Johnson did not return for two years. He evidently had unsuccessful chiropractic treatment during that time.

Johnson eventually qualified for funding from Vocational Rehabilitation Services of Oklahoma and returned to Milo in February 2008. Johnson's condition had become much worse and Milo recommended surgery, consisting of a lumbar laminectomy and discectomy, which was performed in April 2008. After post-surgical recovery, Johnson's condition gradually improved, particularly his ability to walk. Milo prescribed physical therapy and encouraged increased activity, especially walking and noted the absence of any request for medication from Johnson. For various reasons, however, physical therapy was delayed and Johnson curtailed his therapeutic walking. His progress stalled and even reversed through the fall of 2008. In November 2008, he began physical therapy and showed some improvement. Milo prescribed six more weeks of physical therapy and again noted the lack of any request for medication.

In January 2009, Milo found encouraging improvement from physical therapy and treadmill-walking, noting a gain in leg strength and less spasticity in gait. Further improvement was evident in a February 2009 follow-up, including an ability to step up on tiptoes that had previously been impossible. Thereafter, however, physical therapy and personal exercise tailed off and Johnson's condition ceased to improve and, indeed, began to deteriorate again. In June and July 2009, Milo noted the overall inadequacy of post-surgical therapeutic efforts and indicated any future improvement with physical therapy would likely be only marginal. Subsequent visits resulted in similar conclusions. Additional imaging revealed extensive degenerative arthritic changes to the lumbar and thoracic spine but no necessity for surgical intervention.

Following the 2005 accident and during the course of his subsequent treatment, Johnson filed unsuccessful applications for social security benefits but did not pursue them beyond the preliminary review stage. He filed the instant Title II application in September 2010, alleging an onset date (May 31, 2008) late enough not to be barred by prior administrative determinations but early enough to fall before his last-insured date (December 31, 2008).

## AGENCY DECISION

The crux of this case is whether Johnson established a disability during the time period between May 31 and December 31, 2008. The Administrative Law Judge (ALJ) concluded to the contrary and denied benefits at the fifth step of the five-step sequences for assessing disability, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.

3

2009).  The ALJ first confirmed that Johnson had not engaged in work qualifying as substantial gainful activity after the alleged onset date (he did, however, continue working part time at his home remodeling business from May 2008 until February 2010).  At step two the ALJ found Johnson had one severe impairment, i.e, degenerative disc disease, and at step three concluded this impairment did not meet or equal any of the presumptively disabling impairments listed in the regulations.  The ALJ then found Johnson had the residual functional capacity (RFC) for a full range of sedentary work, which, being insufficient for his past relevant work, precluded a disposition at step four.  Finally, at step five he cited two bases for finding Johnson not disabled:  the applicable medical-vocational guideline, *see* 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.21; and a vocational expert's (VE's) identification of several particular jobs in the regional and national economy that Johnson could perform, *see* 20 C.F.R. § 404.1569.

The assessment of Johnson's credibility was critical to the decision.  Johnson testified his condition left him unable to sit, stand, or walk long enough to engage in substantial gainful activity.  The ALJ acknowledged his condition could potentially produce the debilitating symptoms alleged by Johnson, and proceeded to assess the credibility of those allegations in light of the entire record.  Following an extended analysis, he concluded Johnson was not credible to the extent of his asserted functional limitations inconsistent with an RFC for sedentary work.

On administrative appeal, the Appeals Council denied review, making the ALJ's determination the Commissioner's final decision for purposes of judicial

4

review.  *See Krauser*, 638 F.3d at 1327.  Over several objections from Johnson the district court upheld that decision, motivating this appeal.

## APPEAL

As a general matter, we consider only "the issues the claimant properly preserves in the district court and adequately presents on appeal."  *Id.* at 1326 (quoting *Berna v. Chater*, 101 F.3d 631 (10th Cir. 1996)).  At least two issues now argued by Johnson were not preserved in the district court:  his challenge to the ALJ's decision at step three concluding his condition did not meet or equal one of the listings;[1] and his argument about the RFC determination being inconsistent with his need of a cane for ambulation and a job coach.[2]  The due process objection he argued at length in the district court has been dropped on appeal.  Accordingly, we limit our attention to the remaining objections:  (1) the ALJ's credibility analysis was flawed; (2) the ALJ's statement giving great weight to his treating physician and hospital records was inconsistent with the RFC determination; and (3) the ALJ "cherry-picked" the testimony of the VE by selectively relying on statements supporting the existence of available sedentary jobs he could perform and ignoring statements undercutting such a finding.

---

[1] The district court noted Johnson had made only a passing reference, with no adequately developed argument, to the ALJ's determination under the listings and held he had thus waived any objection in that regard.  We agree—and further note Johnson has not challenged the district court's waiver ruling on appeal.

[2] His briefing in the district court did not mention a cane and referred to a job coach solely in connection with his objection to the ALJ's alleged "cherry-picking" of the VE's testimony about available jobs he could perform.  We consider the latter objection later in this decision.

5

## 1. ALJ's Credibility Determination

The ALJ did not consider Johnson to be credible, in particular because of his repeated failure to comply (or comply in timely fashion) with Milo's exercise and physical therapy recommendations, especially during the critical post-operative period in 2008, undermined his allegations of impairment. With that as his focus, Johnson contends his noncompliance with physical therapy is attributable to factors having nothing to do with the credibility of his complaints, namely lack of funds and administrative delays in obtaining required authorizations from Vocational Rehabilitation Services of Oklahoma (VR Services) to cover costs. The Commissioner concedes administrative delay may explain some but not all of Johnson's dilatory and erratic pursuit of the prescribed physical therapy. The parties go on to contest the point, particularly with respect to physical therapy authorized by VR Services in either August or September 2008, by citing documents in the record generally (but not conclusively) appearing to support Johnson's position. In any event, aside from formal physical therapy, the ALJ noted Johnson's failure to comply with Milo's repeated directions to walk increasingly longer distances, which he obviously could do without VR funding by using his treadmill or just walking.[3] The excuse he now offers—that it was too difficult to walk on his own without concomitant physical therapy—is not substantiated by reference to any record evidence.

---

[3] Indeed, Milo's notes indicate he encouraged walking, with or without physical therapy.

Johnson also argues the ALJ overstated the improvement to be expected from compliance with Milo's recommendations of physical therapy and walking. First of all, we note when, as here, noncompliance with prescribed treatment is invoked not as independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms prompting the treatment, the ALJ need not also find the forgone treatment would have restored the claimant's ability to work. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (distinguishing *Frey v. Bowen*, 816 F.2d 508 (1987)). Secondly, the record Johnson cites as a reflection of Milo's denial of the efficacy of post-surgical therapy and exercise was not that at all; it was, rather, just a discharge note acknowledging the extensive nature of the surgery just performed and cautioning Johnson not to "expect any miracles" and to be aware the surgery "can even make him worse or not help at all." Aplt. App. Vol. 2 at 444. In contrast, post-surgical notes reflect Johnson's initial improvement, Milo's repeated insistence on the need for prompt physical therapy and increased walking to secure the goals of surgery, Milo's expressions of concern with delays in physical therapy and Johnson's failure to comply with recommendations for walking, and finally, in mid-2009, Milo's statement that "[*f*]*rom now on*, probably any kind of improvement with physical therapy will just be marginal." *Id.* at 390-92 (emphasis added). In sum, the district court properly cited Johnson's noncompliance with prescribed treatment after surgery as a factor

7

undermining his credibility, regardless of the efficacy of the treatment—which in any event was recognized by the prescribing physician.[4]

In addition, the ALJ did not rely exclusively on Johnson's noncompliance with prescribed treatment in discounting his credibility. The ALJ noted the lack of any evidence of his use of assistive devices during the relevant period, *id.* Vol. 1 at 54,[5] which not only specifically weighed against the credibility of his allegations of ambulatory incapacity, *see Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting relevance of assistive devices to credibility determination), but also, given its inconsistency with his testimony at the hearing indicating he had been using a cane, Aplt. App. Vol. 1 at 52; *see id.* at 90, undermined his credibility as a general matter, *see* SSR 96-7p, 1996 WL 374186 at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). The ALJ also alluded to Johnson's extensive daily activities in continuing to independently care for himself,[6] Aplt. App. Vol. 1 at 54, which is another proper consideration in weighing the credibility of a claimant's

---

[4] We need not decide whether the ALJ may have overstated the potential efficacy somewhat, in saying Johnson's condition "would have improved drastically if he had followed the doctor's instructions," Aplt. App. Vol. 1 at 54. Johnson's noncompliance properly undercut his credibility for the reasons stated above even if the expected improvement were not as dramatic as the ALJ characterized it.

[5] Indeed, a physical therapy report from October 2008 specifically noted the absence of any assistive devices such as a cane. *See* Aplt. App. Vol. 2 at 453.

[6] Johnson reported he does indoor and outdoor household chores, such as mowing the lawn, washing his car, cleaning, laundry, repairs, and cooking meals, without help from anyone. *See* Aplt. App. Vol. 2 at 274-75.

allegations of disabling impairment, *see, e.g.*, *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). Finally, his summary of the medical evidence relevant to the credibility determination included a number of references to non-severe pain and little use of pain medication, *see* Aplt. App. Vol. 1 at 53-54—yet another proper factor in assessing the credibility of a claimant's complaints, *see Wall*, 561 F.3d at 1068; *cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (noting "records . . . replete with [claimant's] reports of pain and of prescriptions and refills for medication" supported claimant's credibility).

In sum, the reference to Johnson's noncompliance with physical therapy may be problematic in light of evidence regarding his difficulty in obtaining authorization for such treatment, but the balance of the credibility analysis, resting on several factors cumulatively undercutting Johnson's credibility, adequately supports the ALJ's determination. In such circumstances, the determination was proper. See, e.g., *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004).

**2. ALJ'S Reliance on Milo**

Johnson argues the ALJ's stated reliance on Milo is belied by Milo's own treatment notes, which he insists reflect a condition inconsistent with the ALJ's RFC determination. Only four pages of the record are cited in support of this fairly summary argument, and these are not very probative of Johnson's condition during the critical period between the alleged onset date of May 31, 2008 and his last insured date of December 31, 2008. The first two pages not only precede the onset date but, being preoperative and operative notes of April 29, 2008, shed no light on

9

the course of Johnson's recovery following the corrective surgery. *See* Aplt. App. Vol. 2 at 444, 448. As summarized previously, Johnson's medical records during the relevant period indicate improvement over his pre-surgical condition, particularly when he engaged in physical therapy and walking. These records are not contrary to the RFC determined by the ALJ—indeed, such records were relied on by social security physicians to specify the sedentary RFC the ALJ ultimately adopted.[7] *See id.* at 409, 416.

The last two pages cited by Johnson are notes from February 2010 and September 2011—long after the date last insured. *See id.* at 353, 433. And while they show difficulty walking at that point (both refer to use of a cane), even they do not demonstrate an inability to handle the occasional standing/walking that can be involved in sedentary work. *See generally* 20 C.F.R. § 404.1567(a).[8] One of the records specifically recommends vocational rehabilitation to assist Johnson "in terms of job placement efforts." Aplt. App. Vol. 2 at 353. The records cited by Johnson simply do not demonstrate any error by the ALJ in relying on Milo and at the same time finding an RFC for sedentary work.

**3. Omissions in RFC related to VE**

Johnson contends the RFC determined by the ALJ and related to the VE erroneously omitted reference to use of a cane, the need for a job coach, or any

---

[7] Milo did not offer an opinion about RFC or specify functional limitations indicating a particular RFC.

[8] None of the medical records cited by Johnson establish a limitation on his ability to sit for long enough to engage in sedentary work.

ambulatory impairment. He never objected to the omission of the cane in the district court, so the point is forfeited. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court."). In any event, as already explained above, records from the relevant period in 2008 contradicted Johnson's claim he had been using a cane at that time.

The notion of a job coach arose during the hearing when the ALJ asked the VE whether, *based on Johnson's testimony*, someone with *his claimed limitations* could still perform jobs in the national economy. *See* Aplt. App. Vol. 1 at 115-17. The VE answered Johnson would need the assistance of a job coach, at least temporarily, to be able to work with his alleged limitations. But, as detailed above, the ALJ ultimately rejected Johnson's testimony. The ALJ is required to include in a hypothetical inquiry to the VE all *and only* those impairments the ALJ properly finds borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The VE's response to a hypothetical inquiry the ALJ posed earlier, which did not assume the credibility of all of Johnson's claimed limitations, identified several jobs he would be able to perform, supporting the ALJ's denial of benefits at step five. *See* Aplt. App. Vol. 1 at 114.

Finally, Johnson's objection regarding the lack of an ambulatory impairment in his RFC shares the faults of his other objections. This argument was not developed in the district court, where Johnson focused instead on the issue of a job coach. *See id.* Vol. 2 at 475-76. In addition, the VE testimony he seizes upon to

11

substantiate the need for and importance of an ambulatory impairment was given only after the ALJ instructed the VE to consider an individual with the limitations claimed by Johnson in his testimony at the hearing—again, testimony the ALJ ultimately did not credit.  It is also worth noting here the ALJ did include a limitation on standing and walking in his RFC (no more than two hours in an eight-hour day) and included that limitation in the hypothetical inquiry in response to which the VE identified the several sedentary jobs Johnson could perform.  *See id.* Vol. 1 at 114.

## CONCLUSION

The judgment of the district court upholding the Commissioner's denial of benefits is affirmed.

Entered for the Court


Terrence L. O'Brien
Circuit Judge

12