**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JIMMY BROWNRIGG,

    Plaintiff - Appellant,

v.

NANCY A. BERRYHILL,[*] Acting
Commissioner of Social Security,

    Defendant - Appellee.

No. 16-7002
(D.C. No. 6:14-CV-00301-JHP-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

The Commissioner of the Social Security Administration (SSA) denied Jimmy

Brownrigg's application for disability insurance benefits (DIB), and the district court

affirmed the denial of benefits. Brownrigg now appeals. Exercising jurisdiction

_____

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the respondent
in this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand for further proceedings.

## I.    Background

Both the Administrative Law Judge (ALJ) and the magistrate judge recounted Brownrigg's medical history and treatment in detail.  *See* Aplt. App., Vol. I at 38-39; *id.*, Vol IV at 891-94.  We incorporate those discussions by reference.

To summarize, Brownrigg had knee surgeries in 1998 and 1999.  In 2010, he sought help for chronic back pain and was diagnosed with acute lumbar strain, degenerative disc disease, spondylosis, and disc problems.  He underwent several back surgeries and neck procedures, including microlumbar discectomies in August 2010 and February 2011, selective nerve root block in January 2011, a cervical epidural steroid injection in May 2011, and an anterior cervical discectomy and fusion in August 2011.  Following those surgeries and procedures, Brownrigg sometimes experienced numbness, tingling, and pain in his hands, arms, shoulders, and legs.  He also continued to experience back and neck pain, although one of his doctors noted some improvement in pain level in mid-2011.  He took various pain medications throughout this time period.

In March 2011, at age 34, Brownrigg sought DIB and supplemental security income (SSI) benefits based on the pain in his back, knees, and neck, as well as dyslexia and depression.  The Commissioner denied his application, initially and on reconsideration.  Brownrigg appeared at a hearing before the ALJ in November 2012, at which he was represented by counsel.  Brownrigg testified, as did a vocational expert

(VE). In December 2012, the ALJ issued a written decision concluding Brownrigg was not disabled during the relevant time period.

In reaching this conclusion, the ALJ applied the familiar five-step sequential evaluation process used to assess social security claims. *See* 20 C.F.R. § 404.1520(a)(4). At step one he found Brownrigg has not engaged in substantial gainful activity since his alleged onset date and, at step two, that Brownrigg has a severe impairment of degenerative disc disease status post lumbar discectomy and cervical fusion surgery but non-severe knee pain and mental impairments. At step three he concluded Brownrigg's impairments are not presumptively disabling and, at step four, found Brownrigg has the residual functional capacity (RFC) to perform a full range of sedentary work but cannot return to his past relevant work as a welder and construction laborer. At step five he considered Brownrigg's age (then 35 years old), high school education, work experience, and RFC, applied the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. pt. 404, subpt. P, app. 2, and found no disability under Rule 201.28 of the grids.

The SSA's Appeals Council denied review, and Brownrigg appealed the Commissioner's decision. The magistrate judge recommended a reversal and remand, but the district court affirmed the ALJ's decision. Brownrigg now appeals the denial of DIB. He does not contest (or even mention) the denial of SSI.

## II.    Analysis

Brownrigg asserts the ALJ erred in four ways: (1) his pain and credibility analysis was flawed; (2) his analysis of the medical opinions was improper; (3) his

3

record analysis was erroneous; and (4) he cited a Fifth Circuit case and thus applied the wrong law. The district court sided with the Commissioner in a summary order.

We review de novo the district court's ruling in a social security case and "independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks omitted). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## A. Pain and Credibility Analysis

We first assess the adequacy of the ALJ's pain and credibility analysis in determining Brownrigg's RFC at step four. Brownrigg contends the ALJ erred because (1) he did not apply the three-step analysis mandated by *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987); (2) his credibility analysis did not account for a car accident in late 2011, during which Brownrigg re-injured his neck *after* he supposedly told his doctor his pain was improving; (3) his pain evaluation was inconsistent with the step-two finding of a severe impairment; and (4) use of the grids was wrong because Brownrigg's pain constitutes a non-exertional impairment. The first two arguments have merit.

4

The ALJ's evaluation of Brownrigg's complaints of disabling pain was indeed inadequate. As we made clear in *Luna* and have reiterated in subsequent cases, the ALJ must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64). Within this analysis, the ALJ should consider factors such as "a claimant's persistent attempts to find [pain relief] and [his] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . . and the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 1167 (internal quotation marks omitted); *see also* SSR 16-3P, 2016 WL 1119029, at *7 (Mar. 16, 2016) (listing similar factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms). The ALJ need not consider these factors in a formalistic way, but the substance must be there. *See Keyes-Zachary*, 695 F.3d at 1167.

In formulating Brownrigg's RFC, the ALJ did not mention *Luna* or its progeny, nor did he comply with their mandates. Instead, he used boilerplate language and cited generally to 20 C.F.R. § 404.1529 and related agency rulings. Granted, he examined some of the objective medical evidence—a task that falls within *Luna*'s first step. Specifically, he summarized Brownrigg's medical visits, noted briefly within the summary that Brownrigg did not have a cane at an

5

appointment with Dr. Terry Kilgore, and highlighted the perceived inconsistency between Brownrigg's hearing testimony that he did not improve after each surgery and his statements to his surgeon about his improved condition post-surgery. But the ALJ did not proceed to the remaining two steps or consider the other relevant factors.

We have not hesitated to reverse and remand in similar situations. *See, e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 679-80 (10th Cir. 2004) (rejecting ALJ's pain analysis as boilerplate, with no attempt to link factors to evidence, in a case where the claimant persistently complained of pain and sought treatment). Our approach is consistent with SSR 16-3P, which emphasizes the insufficiency of conclusory statements and recitations of factors and instructs how the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9.

Because the ALJ did not apply the correct legal test or sufficiently articulate his reasoning, we cannot conduct a meaningful review of the pain assessment. We therefore reverse and remand for him to conduct a *Luna*-based analysis and to explain his reasons for discounting Brownrigg's pain allegations. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." (internal quotation marks omitted)).

The credibility analysis is likewise deficient. The ALJ deemed Brownrigg's "statements concerning the intensity, persistence and limiting effects of these symptoms" not credible to the extent they are inconsistent with the RFC, even though his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Aplt. App., Vol. I at 39. This adverse credibility finding stemmed from the perceived inconsistency between Brownrigg's hearing testimony that he did not improve after each surgery, nor does he recall telling his doctor he did, and medical records reflecting statements to his surgeon, Dr. Kimball Pratt, about his improved condition following treatment in mid-2011.

We recognize "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). But we cannot ascertain whether substantial evidence supports the ALJ's credibility determination here because his analysis was incomplete. The record contains evidence of an event that could have affected Brownrigg's pain level *after* Pratt treated him: on October 25, 2011, Brownrigg re-injured his neck during a collision between his car and a deer. *See* Aplt. App., Vol. IV at 820. Yet the ALJ makes no mention of this event so we cannot tell whether—and, if so, how—this re-injury factored into his findings. Consequently, we reverse and remand for the ALJ to consider this record evidence in evaluating Brownrigg's allegations of current pain and his credibility.

7

Brownrigg's remaining pain-related arguments are without merit. The ALJ's pain evaluation is not inherently inconsistent with his step-two finding of a severe impairment. The ALJ's medical history summary repeatedly acknowledges Brownrigg's reports of pain—enough pain to preclude him from continuing in his past work as a construction worker and welder. Even so, the ALJ reasonably found Brownrigg's pain level did not limit his ability to perform *all* work and thus crafted the RFC to encompass a full range of sedentary work.

Nor are we troubled by the ALJ's use of the grids at step five (in lieu of VE testimony) to determine there are other jobs to which Brownrigg can adjust, which exist in significant numbers in the national economy. "The mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). An ALJ can use the grids if a claimant has a non-exertional impairment like pain "whenever the claimant can perform a substantial majority of the work in the designated RFC category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ found that to be the case here.

### B. Weight Assigned to Medical Opinions

Turning to the weight assigned to the various medical opinions, Brownrigg contends the ALJ erred by (1) giving "little weight" to the opinion of his treating physician, Dr. Michael Irvin, without giving specific, legitimate reasons for rejecting that opinion; and (2) failing to discuss what weight he assigned to the medical opinions of Kilgore (the consulting physician who examined the claimant on October 6, 2011), Pratt (the surgeon), and Douglas Duffy, PA-C (the physician's assistant

8

who worked with Pratt), all of whom noted pain and limitations in movement. We agree in part: the ALJ's discussion of the opinions by Irvin and Kilgore is too minimal to allow us to say the decision is free from legal error or supported by substantial evidence.

We start with Irvin. He completed a Physical RFC Questionnaire in October 2012, *see* Aplt. App., Vol. IV at 855-58, in which he opined:

- Brownrigg has back, shoulder, and knee pain that frequently interferes with attention and concentration, rendering him incapable of even low stress jobs—i.e., "Pt is in pain too much to work," *id.* at 856, and "Pt is very limited due to pain," *id.* at 858.

- In a competitive work situation, Brownrigg cannot walk any blocks without rest or severe pain; must sit less than two hours per day; must stand or walk less than two hours per day; must walk for five minutes every 15 minutes; must shift positions at will; needs to take unscheduled breaks; and must use a cane. *Id.* at 856-57. He can occasionally lift and carry ten pounds but can never lift and carry 20 pounds or more. *Id.* at 857. He can never twist, stoop (bend), crouch, climb ladders, or climb stairs. *Id.* And he has "*significant limitations*" in doing repetitive reaching, handling, or fingering, such that he can only use his right hand and fingers 25% of the time and his left hand and fingers 50% of the time. *Id.* at 858.

- Brownrigg is likely to have "good days" and "bad days" and to miss more than four days of work per month. *Id.* (internal quotation marks omitted).

- Brownrigg has been disabled since July 26, 2010. *Id.*

In evaluating a treating physician's opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must consider whether the opinion is entitled to controlling weight. That requires finding the opinion is both "well-supported by medically acceptable clinical or laboratory diagnostic

9

techniques" and "[]consistent with other substantial evidence in the record." *Id.*

Second, if the opinion is not entitled to controlling weight, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in [20 C.F.R. §§ 404.1527 and 416.927][†] . . . for the weight assigned." *Id.*

Generally, a treating physician's opinion receives more weight than other physicians' opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). But here the ALJ determined Irvin's opinion was entitled to "little weight" in the course of a single sentence: "In regards to the opinion by Dr. Michael Irvin at Exhibit 22F, the undersigned grants it little weight, as

---

[†] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (internal quotation marks omitted). The ALJ need not explicitly discuss all six factors if he otherwise provides good reasons for the weight given to the treating source's opinion—*e.g.*, if he cites contrary, well-supported medical evidence and shows the treating source did not have the opportunity to see contrary evidence of greater functional capacity. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

it is not supported by his own findings and the balance of the record." Aplt. App., Vol. I at 40. Although this statement was preceded by a recitation of the medical evidence dating back to July 28, 2010, it does not satisfy either step. The ALJ did not assess whether the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques." *See Krauser*, 638 F.3d at 1330. And he did not even mention the relevant factors, let alone "give good reasons" or "tie[]" his reasoning to them, as required for the second step. *See* 20 C.F.R. § 404.1527(c); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (the "decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight" (internal quotation marks omitted)).

The Commissioner engages in a post hoc rationalization of the ALJ's conclusion, expounding on what was *not* in the treatment records or Irvin's opinion and concluding: "The ALJ reasonably found that such lack of support rendered Dr. Irvin's opinion due to only little weight." Aplee. Br. at 26. But the ALJ himself did not make these observations or explicitly justify the "little weight" designation, and filling in the blanks is not permitted. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision . . . .").

We cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to Irvin's opinion. *See, e.g.*, *Krauser*, 638 F.3d at 1331 (reversing and remanding because the ALJ's assessment of the treating

11

physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis"); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen, as here, an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (finding the ALJ's conclusion to be inadequate where the court was "left to speculate what specific evidence led the ALJ to find claimant's pain was not disabling"). Therefore, we have no choice but to remand for the ALJ to analyze Irvin's opinion under the framework laid out above.

The ALJ's cursory analysis of the assessment by the consulting physician, Kilgore, likewise prevents meaningful review. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (internal citations omitted). The ALJ granted "significant weight" to all of "the state agency medical consultants' assessment[s]," without identifying by name which doctors fall within that group or discussing the substance of those assessments. *See* Aplt. App., Vol. I at 40. Kilgore's examination report, *see id.*, Vol. III at 591-94, seems to fall within the ALJ's statement,[‡] since he is a state agency medical consultant who completed an assessment. But if it does, such that it was granted "significant

---

[‡] So do Dr. Carmen Bird's Physical RFC Assessment dated October 14, 2011, *see id.*, Vol. III at 600-07, and Dr. Luther Woodcock's Case Analysis dated January 12, 2012, *see id.* at 637. Woodcock reviewed the record evidence upon the claimant's motion for reconsideration and affirmed Bird's assessment.

weight," a problem arises. The parts of the report in which Kilgore documents pain and limitations in movement seem to be inconsistent with the ALJ's ultimate findings; yet, the ALJ did not acknowledge or reconcile the inconsistencies. On remand, the ALJ should also confirm the weight given to Kilgore's opinion and properly evaluate that opinion.

The remaining two medical professionals in question—Pratt and Duffy—did not provide a medical opinion as part of the disability determination. Thus, the ALJ correctly treated their medical records solely as objective evidence (without labeling them "opinions") and considered them in formulating the RFC.

### C. Record Analysis

We reject Brownrigg's remaining arguments as meritless, including his broad arguments critiquing the ALJ's record analysis. Brownrigg goes so far as to say the RFC contains "no limitation whatsoever" to account for his severe impairments, even though the agency doctors—whose opinions were given significant weight—imposed limitations. Aplt. Br. at 6. He gives the following examples of restrictions recommended by the agency doctor that were not accounted for in the RFC: the claimant could occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours per workday; sit about six hours per workday with unlimited pushing and pulling; occasionally climb, stoop, kneel, crouch, and crawl; never balance; and avoid all hazards. *See id.* at 5 (listing restrictions documented in Physical RFC Assessment by Dr. Carmen Bird, Aplt. App., Vol. III at 601-04).

13

We disagree with Brownrigg's assertion because the RFC accounts for these restrictions within the limitation to sedentary work. The lifting, carrying, standing, walking, and sitting limitations are encapsulated within the very definition of a sedentary occupation. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); *see also* SSR 83-10, 1983 WL 31251, at *5 (1983) ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

And most of the remaining limitations do not pose a problem because the agency doctor opined Brownrigg could do them occasionally—except for balance and work in environments with hazards, which he should never do. In any event, these actions are not usually required in sedentary work. *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996) ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."); SSR 83-14, 1983 WL 31254, at *2 (1983) ("Relatively few jobs in

14

the national economy require ascending or descending ladders and scaffolding.");

SSR 85-15, 1985 WL 56857, at *7 ("If a person can stoop occasionally . . . in order

to lift objects, the sedentary . . . occupational base is virtually intact. . . . This is also

true for crouching . . . ."); *see also* SSR 96-9p, 1996 WL 374185, at *9 (explaining

hazards "are considered unusual in unskilled sedentary work").  Any error in this

regard was therefore harmless.

Within his argument challenging the ALJ's record analysis, Brownrigg also

complains about the nature of the VE's testimony.  Here too any errors were

harmless.  The VE opined about relevant jobs available in Texas, not Oklahoma.  But

when considering whether a significant number of jobs exist, "the relevant test is

*either* jobs in the regional economy *or* jobs in the national economy."  *Raymond v.*

*Astrue*, 621 F.3d 1269, 1274-75 n.2 (10th Cir. 2009); *see also* 42 U.S.C.

§ 423(d)(2)(A) (using the national economy as the benchmark but defining "'work

which exists in the national economy'" to mean "work which exists in significant

numbers either in the region where such individual lives or in several regions of the

country"); 20 C.F.R. § 416.966(c) (using the national economy as the benchmark).

Accordingly, in determining whether a significant number of jobs are available, an

ALJ may "look[] to the national economy—not just a local area."  *Raymond*,

621 F.3d at 1274 (internal quotation marks omitted).

In any event, the VE's testimony is not technically inconsistent with the ALJ's

ultimate conclusion because the VE never opined on the full range of sedentary jobs

available to Brownrigg.  Also, the ALJ ultimately relied exclusively on the grids at step five, not on the VE's testimony.

### D.  Citation to Fifth Circuit Case Law

Finally, Brownrigg criticizes the ALJ's citation of a Fifth Circuit case, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), to support the findings made at step two.  He portrays this citation as legal error, even though he concedes the proposition articulated in *Stone* is "similar" to this court's case law.  *See* Aplt. Br. at 4.  But Brownrigg has not demonstrated how the citation to *Stone* adversely affected the disposition of his case.

## III.   Conclusion

The judgment of the district court is reversed and the case is remanded to the district court with instructions to remand to the agency for further proceedings in accordance with this Order and Judgment.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

16